## Case No. 16,699.

UNITED STATES v. WILLETTS et al.

[5 Ben. 220.] [1]

District Court, S. D. New York. June, 1871.

REVENUE FRAUDS—ACT OF 1863—ACTION OF DEBT TO RECOVER VALUE OF GOODS—CONSTRUCTION OF STATUTES.

1. Under the 1st section of the act of March 3d, 1863, to prevent frauds on the revenue (12 Stat. 737), an action of debt lies in behalf of the United States, to recover the value of goods imported in violation of the provisions of that section, against the person, be he owner, consignee or agent of the goods, who knowingly makes or attempts to make an entry of them by any of the false or fraudulent means specified in that act.

[Cited in brief in Ransdell v. Patterson, 1 App. D. C. 491.]

2. Revenue laws, which impose forfeitures for fraud, are not technically penal, so as to call for a strict construction, but are to be construed so as effectually to accomplish the intention of their makers.

[Cited in U. S. v. Laescki, 29 Fed. 700.]

3. Where a penalty is given by statute, and no remedy for its recovery is expressly given, debt will lie.

Noah Davis, Dist. Atty., for the United States.

William M. Evarts, for defendants.

BLATCHFORD, District Judge. This is an action of debt [against Edmund Willetts] to recover the sum of $50,000. There are thirty-eight counts in the declaration, nineteen of the counts being of one type, and nineteen of them being of another type. They relate to importations of foreign goods by different vessels, there being two counts in regard to each importation. The importations were of earthenware, and run from May, 1868, to July, 1869. The first count and all the other counts which bear odd numbers are like each other. The second count and all the other counts which bear even numbers are like each other, and are different from the counts which bear odd numbers. There is a general demurrer to each of the counts. It is necessary to consider only the first and second counts.

The counts are all of them founded on the 1st section of the act of March 3d, 1863 (12 Stat. 737). That section, after prescribing the requisites for invoices, declarations, and certificates of consuls, and the steps to be taken in regard to the same, to procure an entry of

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

merchandise imported into the United States from a foreign country, contains the following provision: "And, if any such owner, consignee or agent, of any goods, wares, or merchandise, shall knowingly make, or attempt to make, an entry thereof by means of any false invoice, or false certificate of a consul, vice-consul, or commercial agent, or of any invoice which shall not contain a true statement of all the particulars hereinbefore required, or by means of any other false or fraudulent document or paper, or of any other false or fraudulent practice or appliance whatsoever, said goods, wares and merchandise, or their value, shall be forfeited and disposed of as other forfeitures for violation of the revenue laws."

The first count avers, that the defendants imported from England into the United States certain earthenware, which goods were subject to the payment of certain ad valorem duties to the United States, on their importation, and were obtained in a foreign country, in other manner than by purchase, after the 1st day of July, 1863, and which the defendants knowingly, as consignees or agents, made an entry of in the office of the collector of customs for the port of New York, by means of a false invoice, and by an invoice which, to their knowledge, was false, and did not contain a true statement of all the particulars required by the provisions of section 1 of the act of March 3d, 1863, and made said entry by means of a false and fraudulent declaration indorsed on said invoice, and signed by the manufacturer, owner, or agent of the owner, of said goods, and by means of other false and fraudulent documents, papers, practices and appliances, contrary to the provisions of said act; that said invoice was false and fraudulent, in that it did not contain the actual market value of said goods, at the time and place when and where the same were procured or manufactured, but said goods were entered in said invoice at a less market value than the actual market value thereof at the time and place of manufacture, and in that it contained a discount, bounty and drawback which had not been actually allowed thereon; that said declaration was false and fraudulent, in that, whereas, by it the manufacturer, owner or agent declared that said invoice was in all respects true, it was not in all respects true, and in that, whereas, by said declaration, said agent, owner or manufacturer declared that said invoice contained a true and full account of the actual market value, or wholesale price, of said goods, at the time and place when and where the same were procured or manufactured, said invoice did not contain a true or full account thereof; and in that, whereas, by said declaration, said agent, owner or manufacturer declared that said invoice contained all charges on said goods, and set forth that no discounts, bounties or drawbacks were contained in said invoice, except such as had been actually allowed thereon, said invoice did contain dis-

counts, bounties and drawbacks that had not been actually allowed thereon; that, by said declaration, entry and invoice, the government was defrauded of a large part of the duties with which said goods were justly chargeable; and that, by reason of the premises, and by force of the statute, the value of said goods, to wit, the sum of $5,000, in gold, became and was forfeited by the defendants to the United States, whereby and by force of the statute an action hath accrued unto the United States, to have of and from the defendants the sum of $5,000, in gold.

The second count varies from the first count, in substance, only by averring that the goods imported were obtained in the foreign country, after the 1st day of July, 1863, by purchase, and that the defendants were owners of the goods, and, as such made entry of them, and that the goods cost more than was stated in the invoice, and that the declaration was false in stating that the invoice truly stated the cost, and that the defendants made the entry with the intent to defraud the government of the duties with which the goods were chargeable.

It is to be noted, that the act of 1863 forfeits the goods "or their value," but does not state of whom such value may be recovered. The 4th section of the act of December 31, 1792 (1 Stat. 289), which was the provision of law involved in the case of U. S. v. Grundy, 3 Cranch [7 U. S.] 338, enacted, in reference to an oath or affirmation to be taken on registering a vessel, that, "in case any of the matters of fact in the said oath or affirmation alleged, which shall be within the knowledge of the party so swearing or affirming, shall not be true, there shall be a forfeiture of the ship or vessel, together with her tackle, furniture and apparel, in respect to which the same shall have been made, or of the value thereof, to be recovered, with costs of suit, of the person by whom such oath or affirmation shall have been made." The 66th section of the act of March 2d, 1799 (1 Stat. 677), which was the provision of law involved in the case of Caldwell v. U. S., 8 How. [49 U. S] 366, enacts, in reference to goods entered, which are not invoiced according to their actual cost at the place of exportation, with design to evade the duties thereupon, or any part thereof, that all such goods, "or the value thereof, to be recovered of the person making entry, shall be forfeited."

The defendants call attention to the fact, that there is no allegation in the declaration, that the goods themselves were forfeited to the United States, or that the defendants have, or have had, the value or proceeds thereof in their possession, or have otherwise become chargeable with the same. They contend, that the several counts of the declaration are bad in substance; that such counts fail to show any relation of debtor to the United States on the part of the defendants; that the action cannot be sustained unless, by contract or by statute, the obligation of debt has been raised in favor of the United States against the defendants; that the act of 1863 creates no personal liability for the forfeiture, and confers no jurisdiction over any personal action; that the 3d section of the same act prescribes a fine not exceeding $5,000, or an imprisonment not exceeding two years, or both, as a punishment on a conviction for doing certain acts in connection with a fraudulent entry; that the omission, in the act of 1863, to prescribe that some particular person shall be liable to a civil action for the value of the goods, leaves the forfeiture of such value to operate on a bond or whatever else may be substituted for the goods themselves, when such goods are proceeded against in rem; and that, unless the statute is thus interpreted, it exposes to unlimited liability, as to time and amount, all persons who may have participated in the entry which exposes the goods themselves to forfeiture.

The question involved in these demurrers came before this court in March, 1871, in the trial before a jury of the case of U. S. v. Baker [Case No. 14,500], which was an action against the owners of imported merchandise, founded on the 1st section of the act of 1863, to recover its value, on the ground that such value had been forfeited to the United States, because of frauds, in violation of that section, in entering the merchandise. The point was taken by the defendants, that the section gave no personal action for the value of the goods. In charging the jury, I said, after quoting the provision in question in the act of 1863: "This section of this statute and the 66th section of the act of March 2d, 1799 (1 Stat. 677), are the only two sections to be found in any statute of the United States relating to forfeitures under the customs laws, which are thus expressed in the alternative—a forfeiture of the offending merchandise or its value. All other statutes, of which there are innumerable ones, forfeit the merchandise simply, and forfeit it only in case it is seized and taken bodily into possession by the United States, and proceeded against as an offending thing, in rem, as it is called, when the question is, whether the property so seized and prosecuted shall be condemned. But this is a prosecution for the value of goods, under the alternative clause—the goods, or their value. The 66th section of the act of 1799, in declaring that goods, or their value, shall be forfeited, when entered on a fraudulent invoice, declares, that the goods, or the value thereof, 'to be recovered of the person making entry,' shall be forfeited, thus designating who shall be the responsible party to be sued by the government. The act of 1863 merely says, that the goods, or their value, shall be forfeited. It does not say, 'to be recovered of the person making entry.' But these words are not necessary to give the right of action under the act of 1863. That is the meaning of this law; and, according to the testimony in this case, the value claimed, if to be recovered from anybody, is to be recovered from these defendants." In that case,

the entry had been made by one of the defendants, and they were the owners of the goods, and the only question was whether the person making the entry had knowingly made it by means of false papers.

Some sensible interpretation must be given to the words "or their value," in the act of 1863. The defendants suggest only this interpretation—that the words mean the value of the goods seized and proceeded against, when such goods are replaced by a bond for their value, or by money paid into court as their value. But the words "or their value" are wholly unnecessary to give to the court in which the suit in rem against the goods is pending, power to condemn any substitute for the goods, or to enforce payment of a bond given for their value. Such is the ordinary practice under the numerous ·statutes which declare merely a forfeiture of a res, and say nothing about its value. The words "or their value" must have some other scope. They cannot refer to a liability which grows out of the fact that the forfeited goods came into the possession of a person who turns them into money and retains such money. The money could never be identified so as to be seized and proceeded against in rem. Moreover, if the statute had intended to give a remedy in rem against such money, it would naturally have used the word "proceeds," and not the word "value." It is very clear, that the words "or their value" imply a personal action against some person for the value, the money value, of the offending goods. And it does no violence to the language of the act to say, that it intends a personal action, to recover such value from the owner, consignee or agent of the goods, who knowingly makes or attempts to make the entry thereof by means of the false or fraudulent paper, practice or appliance. It intends to give to the United States an elective forfeiture, and to make the person who knowingly, as owner, consignee or agent, makes or attempts to make the forbidden entry, responsible for the value of the goods so entered or attempted to be entered. There is no hardship in this. Revenue laws, which impose forfeitures for fraud, are not technically penal, so as to call for a strict construction, but they should be construed so as effectually to accomplish the intentions of their makers. Taylor v. U. S., 3 How. [44 U. S.] 197. And they should not be construed so strictly as to defeat the obvious intention of the legislature. U. S. v. Wiltberger, 5 Wheat. [18 U. S.] 76, 95; ·American Fur Co. v. U. S., 2 Pet. [27 U. S.] 358, 367. When a penalty is given by statute and no remedy for its recovery is expressly provided, debt will lie. Jacob v. U. S. [Case No. 7,157.] Under a statute like the one now under consideration, the proper ·action for the penalty is an action of debt in the name of the United States. Matthews v. Offley [Id. 9,290]; U. S. v. Bougher [Id. 14,627]. The only question in this case is, whether the alternative forfeiture of the value of the goods, given by the statute, is a forfeiture to be re-covered of the person, be he owner, consignee or agent of the goods, who knowingly makes or attempts to make the entry by any of the false or fraudulent means specified. I have no doubt that such and such alone was the intention of congress. The act of 1863 is one, as its title declares, "to prevent and punish frauds upon the revenue," and it is impossible to say that congress intended anything by the words "or their value," unless it intended a personal action, for the value of the goods, against the guilty party whom it had just previously designated. The demurrers are overruled, and the defendants are allowed to plead to the declaration, on payment of costs.