**UNITED STATES, Plaintiff,**

v.

**John E. MURRAY, Jr., Stephen P. Hopkins and Paul C. Ryan, Defendants.**

**Court No. 82-2-00235.**

United States Court of
International Trade.

March 21, 1983.

**450**

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch (A. David Lafer, Washington, D.C., on briefs), for plaintiff.

Widett, Slater & Goldman, Boston, Mass. (Jerome Gotkin and Steven M. Sayers, Boston, Mass., on briefs), for defendant John E. Murray, Jr.

Mahoney, Hawkes & Goldings, Boston, Mass. (Morris M. Goldings, Boston, Mass., on briefs), for defendants Stephen P. Hopkins and Paul C. Ryan.

### Opinion and Order

MALETZ, Senior Judge.

The United States brought this action against defendants John E. Murray, Jr., Stephen P. Hopkins and Paul C. Ryan to recover the value of merchandise allegedly entered in violation of section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (1976).[1] The Government alleges that defendants submitted false statements in 83 separate entries as to the value and country of origin of animal glue. Defendants Murray and Hopkins were indicted in connection with 21 of those 83 entries. Murray was convicted of violating 18 U.S.C. §§ 371 and 542.[2] His conviction was af-

---

1. The statute applicable to these proceedings is section 592 of the Tariff Act of 1930 which was in effect prior to enactment of the Customs Procedure Reform and Simplification Act of 1978. That section provided:

Penalty against goods

If any consignor, seller, owner, importer, consignee, agent, or other person or persons enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or makes any false statement in any declaration under the provisions of section 1485 of this title (relating to declaration on entry) without reasonable cause to believe the truth of such statement, or aids or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement; or is guilty of any willful act or omission by means whereof the United States is or may be deprived of the lawful duties or any portion thereof accruing upon the merchandise or any portion thereof, embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission, such merchandise, or the value thereof, to be recovered from such person or persons, shall be subject to forfeiture, which forfeiture shall only apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles of merchandise to which such fraud or false paper or statement relates. The arrival within the territorial limits of the United States of any merchandise consigned for sale and remaining the property of the shipper or consignor, and the acceptance of a false or fraudulent invoice thereof by the consignee or the agent of the consignor, or the existence of any other facts constituting an attempted fraud, shall be deemed, for the purposes of this section, to be an attempt to enter such merchandise notwithstanding no actual entry has been made or offered.

2. 18 U.S.C. § 542 (1970) provides in part:

*Entry of goods by means of false statements*

firmed by the First Circuit Court of Appeals. *United States v. Murray,* 621 F.2d 1163 (1st Cir.1980). Hopkins was acquitted of all criminal charges. Defendant Ryan was not a party to these criminal proceedings.

Defendants have moved to dismiss the action on four grounds: (1) lack of subject matter jurisdiction; (2) insufficiency of process; (3) failure to state a claim upon which relief can be granted; and (4) insufficiency of service of process.[3] For the reasons that follow, the court concludes that defendants' motion must be denied.

I

■ In support of their contention that this court lacks subject matter jurisdiction, defendants make a two-pronged argument. First, according to defendants, former section 592 authorized the commencement of *in rem* actions only. They continue that this court only possesses *in personam* jurisdiction over actions such as this which have been brought pursuant to 28 U.S.C. § 1582.[4] Consequently, defendants conclude, the court lacks jurisdiction over the present action since it must necessarily be *in rem* in nature. However, it is now established that this court may exercise jurisdiction over all section 592 actions—*in rem* as well as *in personam*—regardless of whether such actions are brought under the pre- or post-

1978 version of that statute. Thus, in *United States v. Accurate Mould Co., Ltd.* 4 CIT ——, 546 F.Supp. 567 (1982), this court rejected the argument that it lacked jurisdiction over an *in rem* forfeiture proceeding brought under former section 592, stating:

> The jurisdictional grant to this court over actions under section 592 is clear and without limitation. 28 U.S.C. § 1582, as amended by the Customs Courts Act of 1980, is not limited by the date of the import transaction. Nor is that section limited to actions which are brought under the present provisions of section 592. To the contrary, it is simply a grant over *any* action brought under section 592 irrespective of whether it is brought under the present provision of section 592 or under the provision which was in effect prior to the amendments made by the Customs Procedure Reform and Simplification Act of 1978.
>
> \*   \*   \*   \*   \*   \*
>
> In sum, Congress in enacting the Customs Courts Act of 1980 provided this court, in plain and unambiguous language, with exclusive jurisdiction over *all* section 592 actions commenced on or after January 30, 1981.

*Id.* at ——, 546 F.Supp. at 568 (emphasis in original). *Accord United States v. Shineman,* 4 CIT ——, Slip Op. 82–77 (September 17, 1982).

---

Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance, or makes any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties; or

Whoever is guilty of any willful act or omission whereby the United States shall or may be deprived of any lawful duties accruing upon merchandise embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission—

Shall be fined for each offense not more than $5,000 or imprisoned not more than two years, or both.

Nothing in this section shall be construed to relieve imported merchandise from forfeiture under other provisions of law.

\*   \*   \*   \*   \*   \*

18 U.S.C. § 371 makes unlawful conspiracy to defraud the United States.

3. At oral argument, counsel for defendants conceded that whatever defects there were with service of process had since been cured by the Government.

4. 28 U.S.C. § 1582, as amended by the Customs Courts Act of 1980, provides in part:

The Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States—

(1) to recover a civil penalty under section 592 ... of the Tariff Act of 1930; ...

In short, regardless of whether an action is commenced under former or present section 592, this court has jurisdiction over such an action pursuant to 28 U.S.C. § 1582, as amended by the Customs Courts Act of 1980.

## II

Defendants next claim that the process in this action is defective because the summons did not bear the signature of the clerk or deputy clerk of the court, or the seal of the court. Defendants contend that this is mandated by Form 4 of the Appendix of Forms to the rules of this court.

■ But there is no direction in either those rules or the Appendix of Forms which requires that a "Form 4" summons bear either the signature of the clerk or deputy clerk, or the seal of the court. Hence, the court finds no merit in this argument. The cases cited by defendants in support of their contention hold that the absence of both the seal of the court and the signature of the clerk renders the summons void and not amendable. *See, e.g., Kramer v. Scientific Control Corp.,* 365 F.Supp. 780 (E.D.Pa. 1973); *Peaslee v. Haberstro,* 19 F.Cas. 71 (C.C.N.D.N.Y.1879) (No. 10,844); and *Dwight v. Merritt,* 4 F. 614 (C.C.S.D.N.Y. 1880). However, these authorities are all district court cases and therefore not relevant to the controversy here. Thus, rule 4(b) of the Federal Rules of Civil Procedure provides that "the summons shall be signed by the clerk, be under the seal of the court, contain the name of the court and the names of the parties, ... " By contrast, this court's rule 4(b) does not require that the summons "be signed by the clerk" or "be under the seal of the court." In addition, 28 U.S.C. § 2632(a) provides in part that:

[A] civil action in the Court of International Trade shall be commenced by filing concurrently with the clerk of the court a summons and complaint, with the content and in the form, manner, and style prescribed by the rules of the court.

Measured against these provisions, and coupled with the fact that this court is one of nationwide jurisdiction necessitating greater flexibility in its procedures, the absence of a rule expressly requiring the clerk's signature and court seal on the summons of this court evidences an intention to dispense with such requirements. Accordingly, it is concluded that there is no defect in the process in this action.

## III

■ Defendants have further moved for dismissal, pursuant to rule 12(b)(5), asserting various grounds for their position that the Government has failed to state a claim upon which relief can be granted.. Among those grounds are *autrefois acquit* (prior acquittal),[5] double jeopardy, *res judicata,* collateral estoppel, and violations of the due process clause. As indicated above, defendants further argue that section 592 only allows *in rem* actions, thereby barring the present *in personam* proceedings.

The court considers each of these arguments, beginning with the claim of double jeopardy.

### A

■ In determining whether the double jeopardy clause is implicated in a putatively civil action such as the present one, the following two-tier inquiry is to be used:

[T]he question whether a particular statutorily-defined penalty is civil or criminal is a matter of statutory construction.... First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.... Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.... In

5. Other than the constitutional underpinning of double jeopardy, there appears to be no difference between *autrefois acquit* and double jeopardy. *See, e.g.,* Black's Law Dictionary 170 (4th ed. 1968).

regard to this latter inquiry, we have noted that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." . *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980) (citations omitted). As to the legislative purpose of section 592, it would seem clear that Congress intended that section to be a civil remedial sanction. Indeed, in *United States v. Alcatex, Inc.,* 328 F.Supp. 129 (S.D.N.Y.1971), this very issue was presented for resolution in the context of a claim of double jeopardy. The court, noting Congress' clear intent to provide for both punitive and remedial sanctions by providing for the former in Title 18 of the United States Code and for the latter in Title 19 of the United States Code, found that Congress did not intend to make them mutually exclusive.[6] The court therefore concluded that section 592 must be viewed as creating a civil action in the context of a double jeopardy claim. *Id.* at 132–33.

A consideration of related Supreme Court decisions leads to no different conclusion. *See, e.g., One Lot Emerald Cut Stones and One Ring v. United States,* 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972) (double jeopardy clause does not foreclose a forfeiture action under 19 U.S.C. § 1497 following a smuggling acquittal under 18 U.S.C. § 545 because "neither two criminal trials nor two criminal punishments" are involved); *Rex Trailer Co. v. United States,* 350 U.S. 148, 151–54, 76 S.Ct. 219, 221–22, 100 L.Ed. 149 (1956); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 548–52, 63 S.Ct. 379, 386–88, 87 L.Ed. 443 (1943). Thus, as to the first inquiry regarding congressional intent, Congress intended to impose both criminal and civil penalties upon persons in defendants' position.

The court next considers whether Congress, despite its manifest intention to establish a civil, remedial mechanism, nevertheless provided for sanctions so punitive as to "transform what was clearly intended as

a civil remedy into a criminal penalty." *Rex Trailer Co.,* 350 U.S. at 154, 76 S.Ct. at 222. On this score the district court in *Alcatex* observed that:

[T]he Government is on firm ground when it characterizes the statute here in question [section 592] as being broadly "remedial." The Government in cases like this may fairly be presumed to have suffered injury. First, in order to further the purposes of the pertinent statutes, there is the heavy expense of investigating, monitoring and prosecuting alleged lawbreakers. The expense is caused because of the alleged conduct of defendants and others like them. It is understandable, and by no means unjust, for Congress to decide that when lawbreakers are caught they should help to defray the enforcement expenses.... Moreover, the Government suffers in cases like this the injury of having its trade, economic and foreign policies frustrated or impeded. This kind of damage, [is] not the less real for being difficult or impossible to measure precisely, ... It seems clear, in short, that forfeiture of the illegally imported property "or the value thereof" is a reasonable and fair form of liquidated damages ... designed to "afford the government complete indemnity for the injuries done it" and "to make sure that the government would be made completely whole."

*Id.,* 328 F.Supp. at 132–33 (citations omitted).

The court fully agrees with the conclusions reached in *Alcatex.* In similar contexts the Supreme Court has recognized that a remedy such as that provided for in section 592 is neither so unreasonable nor so excessive that it transforms what was clearly intended as a civil remedy into a criminal penalty. In the leading Supreme Court decision in this area, *Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938), the Court concluded that provisions such as section 592 are remedial, not puni-

---

**6.** Whatever further doubts there may be on this point are resolved by the following provision in 18 U.S.C. § 542:

Nothing in this section shall be construed to relieve imported merchandise from forfeiture under other provisions of law.

tive, in nature. In *Mitchell* Justice Brandeis observed that:

> Forfeiture of goods or their value and the payment of fixed or variable sums of money are other sanctions which have been recognized as enforceable by civil proceedings since the original revenue law of 1789. Act of July 31, 1789, c. 5, § 36, 1 Stat. 29, 47. In spite of their comparative severity, such sanctions have been upheld against the contention that they are essentially criminal . . . .

*Id.* at 400, 58 S.Ct. at 633. *See also One Lot Emerald Cut Stones,* 409 U.S. at 232, 93 S.Ct. at 490 (forfeiture plus penalty equal to value of smuggled goods not criminal); *Hess,* 317 U.S. at 549–50, 63 S.Ct. at 387 (double damages civil penalty for construction fraud not criminal).

In summary, the court concludes that the present action does not implicate a violation of the double jeopardy clause.

**B**

In support of their rule 12(b)(5) motion based on *res judicata* and collateral estoppel defendants place heavy reliance upon *Coffey v. United States,* 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684 (1886). That case held that a judgment acquitting a defendant of tax evasion barred a subsequent forfeiture action to confiscate the defendant's distilling equipment. In contradistinction to *Coffey,* however, the latest Supreme Court decisions hold that a civil action following a criminal acquittal involving the same or closely similar facts is not barred by *res judicata* or collateral estoppel.[7]

█ It is now settled that neither the doctrine of *res judicata* nor collateral estoppel precludes a subsequent civil action which is based on the same facts as a prior criminal proceeding which resulted in an acquittal. First, in connection with *res judicata,* the Supreme Court plainly stated the rule in *Helvering v. Mitchell:*

> Since this proceeding to determine whether the amount claimed is payable as a tax is a proceeding different in its nature from the indictment for the crime of wilfully attempting to evade the tax, the contention that the doctrine of estoppel by judgment applies rests wholly on the assertion that the issues here presented were litigated and determined in the criminal proceeding. . . . But this is not true.
>
> The difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of *res judicata.* The acquittal was "merely . . . an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused." *Lewis v. Frick,* 233 U.S. 291, 302 [34 S.Ct. 488, 492, 58 L.Ed. 967]. It did not determine that Mitchell had not wilfully attempted to evade the tax. That acquittal on a criminal charge is not a bar to a civil action by the Government, remedial in its nature, arising out of the same facts on which the criminal proceeding was based has long been settled.

*Id.* 303 U.S. at 397, 58 S.Ct. at 632. *Accord United States v. Nat'l Ass'n of Real Estate Boards,* 339 U.S. 485, 492–93, 70 S.Ct. 711, 715–16, 94 L.Ed. 1007 (1950).

The rule is the same in connection with collateral estoppel. The Supreme Court explained in *One Lot Emerald Cut Stones* that:

> [T]he difference in the burden of proof in criminal and civil cases precludes application of the doctrine of collateral estoppel.

---

7. The Court's opinion in *Coffey* was not based on either the double jeopardy or due process clauses, but rather on the nonconstitutional basis of issue preclusion. Thus, insofar as the *Coffey* decision was reached on a ground other than the double jeopardy clause, it is distinguishable from the present case.

Although *Coffey* has not been expressly overruled, its holding has not been expanded. *See, e.g., One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 235 n. 5, 93 S.Ct. 489, 492 n. 5, 34 L.Ed.2d 438 (1972); 1B J. Moore, W. Taggart, J. Wicker, Moore's Federal Practice ¶ 0.418[3] (1982). In those cases where the penalty provision in issue has been regarded as additional criminal punishment *Coffey* has been followed. *See, e.g., United States v. One Assortment of 89 Firearms,* 685 F.2d 913 (4th Cir.1982) (*en banc*).

The acquittal of the criminal charges may have only represented " 'an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused.' " ... As to the issues raised [in the criminal proceeding], it does not constitute an adjudication on the preponderance-of-the-evidence burden applicable in civil proceedings.

*Id.* 409 U.S. at 235, 93 S.Ct. at 492 (citations omitted).

The court finds these decisions controlling. Moreover, this court's conclusion that a section 592 proceeding is a civil remedy, separate from the criminal provisions of 18 U.S.C. § 542, distinguishes the present case from *Coffey* and its progeny. *See, e.g., United States v. One Assortment of 89 Firearms,* 685 F.2d 913 (4th Cir.1982) (*en banc*). In the *89 Firearms* decision the court found a forfeiture proceeding—which was an integral part of a criminal statute— to be a criminal penalty and thus barred by the prior criminal acquittal of the defendant. *Id.* at 918. In reaching this conclusion the Fourth Circuit panel relied heavily on *Coffey* where the forfeiture action was based on statutory provisions identical to those cited in the indictment. Here, by contrast, the criminal penalty provided by 18 U.S.C. § 542 is separate and distinct from the civil sanction provided by 19 U.S.C. § 1592. *See United States v. Gramer,* 191 F.2d 741 (9th Cir.1951).

■ In sum, the court concludes that this action is not barred by either the doctrines of *res judicata* or collateral estoppel.

## C

Defendants next argue that the action is barred because it violates their due process rights under the fifth amendment. Although defendants have not clearly articulated their position, it appears to be essentially twofold: (1) that this action has been unjustifiably delayed and (2) that the defense of a full trial would constitute an "intolerable economic burden" for them.

■ As to unjustifiable delay, defendants claim that the commencement of the present action on February 25, 1982 for entries extending from 1972 to 1975 violates the due process guarantee of a prompt judicial determination. The court notes, however, that all of the defendants waived the defense of the statute of limitations until February 28, 1982. Defendants having thus waived their rights under the statute of limitations cannot now claim a denial of due process by virtue of a passage of time to which they have agreed. See *United States v. Thirty-Seven Photographs,* 402 U.S. 363, 374, 91 S.Ct. 1400, 1407, 28 L.Ed.2d 822 (1971) ("No seizure or forfeiture will be invalidated ... where the claimant is responsible for extending either administrative action or judicial determination beyond the allowable time limits....."). See also *Ivers v. United States,* 581 F.2d 1362, 1372– 73 (9th Cir.1978).

■ Furthermore, in connection with both delay and economic hardship, it is significant that the merchandise in question entered the flow of United States commerce. The Government never seized or detained defendants' merchandise which has an alleged total domestic value of $5,045,266.39. The fact that the Government never had possession of the merchandise distinguishes this case from *United States v. Eight Thousand Eight Hundred Fifty Dollars,* 645 F.2d 836, 839–40 (9th Cir.1981), where that court reversed the district court's forfeiture order since the Government had unjustifiably delayed the institution of forfeiture proceedings in a situation where a currency importation of $8,850 had been seized and retained by Customs at the port of entry following a failure to declare. Considering that the merchandise involved here was never seized by Customs, coupled with the fact that every defense of a lawsuit involves some degree of economic hardship, defendants' claim of "an intolerable economic burden" lacks merit.

■ Finally, it is to be observed that it is not violative of constitutional guarantees to impose both a civil and criminal sanction for the same act. *United States v. Ward,* 448 U.S. at 250, 100 S.Ct. at 2642; *One Lot Emerald Cut Stones,* 409 U.S. at 235, 93

S.Ct. at 492; *Helvering v. Mitchell,* 303 U.S. at 399, 58 S.Ct. at 633. Thus, the imposition of both criminal and civil penalties for the filing of false or fraudulent entries is not a violation of due process.

## D

In addition to the foregoing constitutional and related grounds for dismissal, defendants insist that the complaint should be dismissed for failure to state a claim on the asserted ground that the Government here seeks an *in personam* remedy, whereas former section 592, which was applicable when the alleged violations occurred, provided only for an *in rem* forfeiture proceeding. Defendants base this contention in essence upon the legislative history surrounding former section 592.

As to that legislative history, defendants argue that Congress, in enacting section 592 in 1930, entitled that section "Penalty Against Goods," thus evidencing its intent to give the United States the right to commence only *in rem* forfeiture proceedings. Defendants buttress this argument by pointing to section 591 of the Tariff Act of 1930—the criminal analog to section 592— which provided for *in personam* criminal penalties. Defendants contend that given this latter consideration Congress could not have intended to authorize the imposition of personal penalties in section 592 in addition to the forfeiture proceedings provided for therein. Finally, defendants point to the fact that when Congress amended section 592 in 1978 it noted:

> The penalty for violation of section 592 would be changed from an in rem penalty, forfeiture of the merchandise, to an in personam penalty, a monetary liability of the importer.

S.Rep. No. 778, 95th Cong., 2d Sess. 19, *reprinted in* 1978 U.S.Code Cong. & Ad. News 2211, 2230.[8]

8. It is to be noted, however, that in that same Senate report, it was observed that violations of former section 592 were "penalized by forfeiture of the merchandise or *a payment equal to the value of the merchandise.*" 1978 U.S.

In connection with this first argument that the heading of section 592, "Penalty Against Goods," marks the outer boundary of the kind of proceedings which may be brought pursuant thereto, it is fundamental that section headings to statutory provisions are not generally delimiting. This is because the words of a heading, being more general, do not control the more specific words of the statute, except to the extent that the former may evidence a wider operation of the act than disclosed by their words. 2A C. Dallas Sands, Sutherland's Statutes and Statutory Construction § 47.14 (4th ed. 1972). The Supreme Court observed in this very regard in *Brotherhood of Railroad Trainmen v. Baltimore & Ohio R. Co.,* 331 U.S. 519, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947):

> [A] heading is but a short-hand reference to the general subject matter involved.... [H]eadings and titles are not meant to take the place of the detailed provisions of the text.... Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles. Factors of this type have led to the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text. *United States v. Fisher,* 2 Cranch 358, 386 [2 L.Ed. 304]; *Cornell v. Coyne,* 192 U.S. 418, 430 [24 S.Ct. 383, 385, 48 L.Ed. 504]; *Strathearn S.S. Co. v. Dillon,* 252 U.S. 348, 354 [40 S.Ct. 350, 351, 64 L.Ed. 607]. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.

Code Cong. & Ad.News 2211, 2228 (emphasis added). *See United States v. Appendagez, Inc., et al.,* —— CIT ——, at —— – ——, Slip Op. 83–14, at 4–7, 560 F.Supp. 50 (1983).

*Id.* at 528–29, 67 S.Ct. at 1391–92. Here the scope of section 592 is unmistakable on its face. In simple, unambiguous language that section makes reference to a mechanism for recovering the *value* of merchandise from persons who violate section 592, language clearly contemplating a personal action against section 592 violators. *See United States v. Willetts,* 28 F.Cas. 612, 614 (S.D.N.Y.1871) (No. 16,699).

Second, the fact that Congress imposed an *in personam* criminal sanction for false statements or omissions in no wise precludes *in personam* civil remedies for the same conduct. *United States v. Alcatex.* This is underscored by the repeal in 1948 of 19 U.S.C. § 1591 and its reenactment in section 542 of Title 18, entitled "Crimes and Criminal Procedure." This would indicate that Congress intended to separate and distinguish civil sanctions in section 592 from criminal penalties in 18 U.S.C. § 542 and to provide for an *in personam* sanction in each instance. *See One Lot Emerald Cut Stones,* 409 U.S. at 236, 93 S.Ct. at 492 ("The fact that the sanctions were separate and distinct and were contained in different parts, of the statutory scheme [19 U.S.C. § 1497 and 18 U.S.C. § 545] is relevant.... Congress could and did order both civil and criminal sanctions, clearly distinguishing them.")

Nor is defendants' citation to the legislative history accompanying the 1978 amendments to section 592—even were that history unmistakably clear—conclusive as to the meaning of former section 592.[9] While the views of a subsequent Congress may be entitled to some weight in limited circumstances, such as when the precise intent of the enacting Congress is obscure, *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974); *Seatrain Shipbuilding Corp. v. Shell Oil Co.,* 444 U.S. 572, 596, 100 S.Ct. 800, 813, 63 L.Ed.2d 36 (1980), such views cannot override the unmistakable intent of the enacting one. *Teamsters v. United States,* 431 U.S. 324, 354 n. 39, 97 S.Ct. 1843, 1864 n. 39, 52

L.Ed.2d 396 (1977). As the Supreme Court cautioned in *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 331, 4 L.Ed.2d 334 (1960), "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Accord Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 117, 100 S.Ct. 2051, 2060, 64 L.Ed.2d 766 (1980).

What is particularly significant is that the pre-1978 version of section 592 contained the phrase "or the value thereof, to be recovered from such person or persons." On its face this language does not limit the Government's civil remedy solely to an *in rem* forfeiture proceeding against merchandise or the identifiable proceeds therefrom, as defendants argue. Had Congress so intended it would have used the word "proceeds" rather than the word "value." Moreover, Congress undoubtedly recognized the difficulty, if not impossibility, of seizing offending merchandise, or the identifiable proceeds therefrom, once it had entered the stream of commerce. Consequently, Congress gave the Government the right to proceed against violators of former section 592 in an *in personam* civil action to recover the value of the merchandise. Otherwise, violators of that section would be able to enter the merchandise into the stream of commerce and thereby immunize themselves from liability for the money value of the offending merchandise. *See United States v. Appendagez,* —— C.I.T. at —— ——, 560 F.Supp. 50 (1983).

The short of the matter is that there is nothing in the legislative history or plain language of former section 592 which would lead to the conclusion that that section only authorized *in rem* actions.

### IV

For all of the foregoing reasons, defendants' motions to dismiss are denied.

---

9. As previously indicated, this legislative history is contradictory on the question whether or

not only *in rem* proceedings could be brought under former section 592. *See* note 8, *supra.*