Slip Op. 99 - 89

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Before: MUSGRAVE, JUDGE** |
| | : | |
| DE BELLAS ENTERPRISES, INC., | : | Court No. 92-10-00669 |
| and ANTHONY DE BELLAS, | : | |
| | : | |
| Defendants. | : | |

[Defendant Anthony DeBellas's Motion to Dismiss is denied.]

Dated: August 24, 1999

*David W. Ogden*, Acting Assistant Attorney General; *David M. Cohen*, Director Commercial Litigation Branch, Civil Division, United States Department of Justice (*A. David Lafer* and *Franklin E. White, Jr.*), for plaintiff.

*Fotopulos & Spridgeon* (*Thomas E. Fotopulos*), for defendant.

## MEMORANDUM OPINION AND ORDER

This is an action to recover a civil penalty pursuant to 19 U.S.C. § 1592. Defendant Anthony DeBellas moves that he be dismissed from this action because the United States Bankruptcy Court for the Middle District of Florida has entered an order discharging him from liability for the civil penalty to the extent that it is based upon compensating the government for actual pecuniary loss. *See* Order of the United States Bankruptcy Court for the Middle District of Florida (August 26, 1998) ("Bankruptcy Court Order") at 2. Defendant argues that the civil penalty provided for in 19

U.S.C. § 1592 must be based upon compensating the government for its actual pecuniary loss; therefore, the government is barred from recovery by the bankruptcy court's order. Defendant also argues that if the civil penalty exceeds the government's actual loss, it violates the Double Jeopardy Clause because he has already admitted criminal liability in connection with one of the entries. For the reasons set forth herein, Defendant's motion is denied.

### *Background*

Plaintiff, the United States Customs Service, alleges that from September 13, 1984, through October 15, 1987, Defendants, Anthony DeBellas and DeBellas Enterprises, Inc., fraudulently entered wearing apparel into the United States under cover of 56 consumption entries. Plaintiff filed this action on October 7, 1992, seeking to have Defendants adjudged jointly and severally liable for a civil penalty in the amount of $1,568,044.00 plus interest, unpaid duties in the amount of $102,599.86 plus interest, costs of suit, and attorney fees.

On February 6, 1997, Defendant Anthony DeBellas filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. This Court ordered that the present action be stayed pending the resolution of the bankruptcy proceeding. Defendant subsequently filed with this Court a Discharge of Debtor issued by the bankruptcy court. Shortly thereafter, Plaintiff filed a motion to lift the stay of proceedings and schedule trial. In its motion, Plaintiff conceded that Defendant's liability for any unpaid duties was discharged by the bankruptcy court ruling, but argued that the civil penalty was excepted from discharge. Defendant then reopened his bankruptcy case and filed an adversary proceeding against Plaintiff. On November 14, 1997, this Court issued an order deferring a ruling on Plaintiff's motion to lift the stay and schedule trial pending a decision by

the bankruptcy court in the adversary proceeding.

The bankruptcy court subsequently issued an order stating that

> should the United States ultimately succeed in proving the merits of its fraud complaint in the United States Court of International Trade, the civil fraud penalty assessed by the U.S. Customs Service is excepted from this Court's prior discharge of debtor to the extent that the penalty ultimately imposed by the United States Court of International Trade against Anthony John DeBellas is not based upon compensating the government for actual pecuniary loss.

Bankruptcy Court Order at 2. On May 11, 1999, Defendant filed the motion to dismiss which is presently before this Court.

## *Discussion*

The Court first considers Defendant's argument that the civil penalty must be based on compensating Plaintiff for its actual pecuniary loss. As a preliminary matter, the Court notes that there is nothing in the language of 19 U.S.C. § 1592 indicating that the amount of the penalty is in any way related to costs incurred by the government. Defendant bases his argument on prior opinions of this Court which have stated that § 1592 penalties can be considered a form of liquidated damages "to defray the enforcement expenses" and remedy the government's "injury of having its trade, economic, and foreign policies frustrated or impeded." *United States v. Murray*, 5 CIT 102, 106, 561 F. Supp. 448, 453 (1983) (quoting *United States v. Alcatex, Inc.*, 328 F. Supp. 129 (S.D.N.Y. 1971)); *accord United States v. Ziegler Bolt & Parts Co.*, 19 CIT 13 (1995); *United States v. Dantzler Lumber & Export Co.*, 16 CIT 1050, 810 F. Supp 1277 (1992); *United States v. Valley Steel Products Co.*, 14 CIT 14, 729 F. Supp. 1356 (1990). However, this language does not reflect the statutory basis for assessing the penalty. When properly understood in the context of the

opinions, these statements merely explain how the penalty functions from a practical standpoint. In these cases the Court was addressing the issue of whether the civil penalty was so excessive compared to the harm inflicted by the alleged violation that it constituted a criminal punishment. The Court concluded that the penalty provided by 19 U.S.C. § 1592 was not excessive because the money received could be used to remedy the monetary and non-monetary losses resulting from a violation of the customs laws, which would otherwise go unredressed.[1] Thus, in terms of its practical effect, the money received from the civil penalty functions in much the same way as an award of liquidated damages, but this is *not* the essential purpose of the penalty.

Congress's purpose for enacting 19 U.S.C. § 1592 was to "encourage the accurate completion of the entry documents upon which Customs must rely to assess duties and administer other customs laws." S. Rep. No. 95-778, at 17 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2211, 2229. The sole statutory basis for determining the amount of the penalty is the defendant's conduct, not the amount of incidental loss and harm suffered by the government. *See* 19 U.S.C. § 1592(a) and (c). Therefore, since the penalty amount is based on the defendant's conduct rather than the government's "actual pecuniary loss," the bankruptcy court order does not bar Plaintiff from recovering a civil penalty imposed by this Court under 19 U.S.C. § 1592.

The Court now considers Defendant's second argument, that the penalty violates the Double Jeopardy Clause to the extent that it exceeds the government's actual pecuniary loss. In prior

---

[1] The Court also has discretionary power to award penalty amounts less than the maximum authorized by the statute, and it may consider the harm done to the government when making this determination. *See United States v. Gordon*, 10 CIT 292, 634 F. Supp. 409 (1986); *United States v. Modes*, 17 CIT 627, 826 F. Supp. 504 (1993). Nevertheless, the primary basis for the penalty is the unlawful conduct of the defendant. *See* 19 U.S.C. § 1592(a) and (c).

opinions, this Court has uniformly rejected double jeopardy arguments against actions based on 19 U.S.C. § 1592. *See United States v. Ziegler Bolt & Parts Co.*, 19 CIT 13 (1995); *United States v. Dantzler Lumber & Export Co.*, 16 CIT 1050, 810 F. Supp 1277 (1992); *United States v. Valley Steel Products Co.*, 14 CIT 14, 729 F. Supp. 1356 (1990); *United States v. Murray*, 5 CIT 102, 561 F. Supp. 448 (1983). However, the Court's analysis in the majority of these opinions was guided by *United States v. Halper*, 490 U.S. 435 (1989), which was overruled by *Hudson v. United States*, 522 U.S. 93 (1997). Although the test set forth in *Hudson* leads the Court to the same conclusion it reached under *Halper*, since no opinion of this Court has examined 19 U.S.C. § 1592 in light of *Hudson* it is appropriate to do so now.

In *Hudson* the Supreme Court noted that "all civil penalties have some deterrent effect," and "[i]f a sanction must be 'solely' remedial (*i.e.*, entirely nondeterrent) to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause." 522 U.S. at 102. To avoid this outcome, the Supreme Court reaffirmed the traditional test for evaluating whether a civil penalty places a defendant in double jeopardy. *Id.* at 96. *See also United States v. Murray*, 5 CIT 102, 561 F. Supp. 448 (1983); *United States v. Alcatex, Inc.*, 328 F. Supp. 129 (S.D.N.Y. 1971) (applying the traditional test to 19 U.S.C. § 1592). The traditional inquiry has two parts. First, the court examines "whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other,'" civil or criminal. *Id.* at 99 (citing *United States v. Ward*, 448 U.S. 242, 248 (1980)). Second, even if the legislature intended a penalty to be civil, the court examines whether the purpose and effect are such that the penalty is actually a criminal punishment. *Hudson*, 522 U.S. at 99 (citing *Ward*, 448 U.S. at 248-49; *Rex Trailer Co.*

*v. United States*, 350 U.S. 148, 154 (1956)).  The examination of the purpose and effect of a civil

penalty statute is guided by the following factors:

> (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of *scienter*"; (4) "whether its operation will promote the traditional aims of punishment – retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime". . . .

*Hudson*, 522 U.S. at 99 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)).[2]

Where Congress has indicated that the penalty is "civil," the "clearest proof" is required before a

court may deem it unconstitutional based on its purpose and effect.  *Hudson*, 522 U.S. at 100

(quoting *Ward*, 448 U.S. at 249).

When 19 U.S.C. § 1592 is examined in light of the traditional test set forth in *Hudson*, it

becomes clear that although the statute has a punitive aspect, it does not violate the Double Jeopardy

Clause.  As to the first part of the test, the statute expressly states that the penalty is civil.  *See* 19

U.S.C. § 1592(c)(1) - (3) (stating that a violation of subsection (a) is punishable by a civil penalty).

Furthermore, analysis under the second part of the test reveals that the statute is also civil in purpose

and effect based on the factors articulated in *Hudson*, *supra*.

The Court begins its analysis under *Hudson* by noting that the statute does not contemplate

the imposition of an "affirmative disability or restraint," such as prison or probation.  Second, the

only sanction authorized is a monetary payment, which has never been viewed as punishment.  *See*

---

[2]  The *Hudson* opinion cites seven factors as "useful guideposts," but only uses these first five factors in its analysis of the civil sanction at issue in that case.  Since this Court's conclusion on each of these five factors mirrors the conclusions reached by the Supreme Court in *Hudson*, it is unnecessary to extend the scope of the analysis beyond these factors.

*Hudson*, 522 U.S. at 104.  Third, the Court notes that a finding of *scienter* is not required for the statute to come into play.  Subsection (c) provides different maximum penalty amounts depending on whether the violation of subsection (a) involves fraud, gross negligence, or negligence.  Although there is a *scienter* requirement for certain penalty amounts, a penalty can still be imposed where the conduct involves only simple negligence.  *Cf. Hudson*, 522 U.S. at 104-05 (holding that *scienter* was not a prerequisite to debarment where the defendant could be debarred for a "continuing" violation irrespective of whether it was willful).  Even if the highest penalty amount available under 19 U.S.C. § 1592(c) is awarded based on a finding of fraudulent conduct, the fact that *scienter* was a consideration in imposing the actual penalty is not sufficient to create a violation of the Double Jeopardy Clause if the other factors indicate that the penalty is civil in nature.  *See  Hudson* at 101 (citing *Kennedy*, 372 U.S. at 169) ("[N]o one factor should be considered controlling as they 'may often point in differing directions.'").

Continuing the analysis of purpose and effect, under the fourth *Hudson* factor, the Court recognizes that 19 U.S.C. § 1592 will deter others from engaging in the prohibited conduct. However, as the Supreme Court noted in *Hudson*, "deterrence 'may serve civil as well as criminal goals.'" 522 U.S. at 105 (quoting *United States v. Ursery*, 518 U.S. 267, 292 (1996)).  By deterring others from entering or attempting to enter merchandise into the United States by means of a materially false document, or one in which material information was omitted, the penalty encourages "the accurate completion of the entry documents upon which Customs must rely to assess duties and administer other customs laws," S. Rep. No. 95-778, at 17 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2211, 2229, thereby promoting the trade, economic, and foreign policies of the United States and

furthering the stability and predictability of international commerce, *see United States v. Murray*, 5 CIT 102, 561 F. Supp. 448 (1983). Finally, although the conduct for which the civil penalty may be imposed might also give rise to criminal prosecution, the Supreme Court has held that "this fact is insufficient to render money penalties criminally punitive." *Hudson*, 522 U.S. at 105 (citing *Ursery*, 518 U.S. at 292).

Based on the court's prior opinions and its analysis of 19 U.S.C. § 1592 under the test set forth in *Hudson*, it is clear that the civil penalty provided by the statute is not based on compensating the government for actual pecuniary loss and equally clear that it does not place a defendant in danger of double jeopardy. Therefore, the government is not barred from recovery by the bankruptcy court order and Defendant's motion to dismiss is denied. The Court declines to address the issue raised by the parties concerning whether the penalty amount may be divided and a portion designated as compensation for the government's actual pecuniary loss. At this stage in the proceedings this issue is not ripe for adjudication since no penalty has been assessed.

### *Conclusion*

For the foregoing reasons, the Motion to Dismiss Defendant Anthony DeBellas is denied. So ordered.

_____
                                      R. KENTON MUSGRAVE, JUDGE


Dated: August 24, 1999
         New York, New York