The UNITED STATES, Plaintiff,

v.

Stanley GORDON, Defendant.

No. 84-1-00074.

United States Court of
International Trade.

April 25, 1986.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C., and Velta A. Melnbrencis, Civil Div., Dept. of Justice, New York City, for plaintiff.

Fronfield & deFuria (Leo A. Hackett, Media, Pa.), for defendant.

## OPINION

RESTANI, Judge:

Plaintiff-United States alleges that defendant-Stanley Gordon unlawfully introduced an automobile, attempted to introduce a second automobile, and aided or abetted in the introduction of a third automobile, into the commerce of the United States,[1] in violation of 19 U.S.C. §§ 1481, 1484, 1485 and 1592.[2] Accordingly, plaintiff seeks to have judgment entered against defendant for monetary penalties as provided for in 19 U.S.C. § 1592 (1982).[3] An action is also apparently pending in federal district court, in which plaintiff seeks to have a penalty imposed on this same defendant for his involvement in these same allegedly unlawful importations and attempted importation, pursuant to 19 U.S.C. § 1595a(b).[4] In connection with discovery in the case at bar, plaintiff has served defendant with a request for production of documents and things and a request for

1. The three automobiles in question have been identified by plaintiff, respectively, as a Morgan 4/4, chassis No. B3352, manufactured in 1974; a Morgan Plus 8, chassis No. R8300, manufactured in 1977; and a Morgan automobile, chassis No. B3977, manufactured in 1977.

2. Briefly, each automobile was allegedly fitted with a plaque falsely fixing the year of manufacture as 1966, which allegedly facilitated importation without compliance with certain requirements of the National Traffic and Motor Safety Act of 1966, the Clean Air Act, and pertinent regulations implementing the two acts.

3. 19 U.S.C. § 1592 (1982) provides in relevant part:
(a) **Prohibition**
(1) **General Rule**
Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty thereby, no person, by fraud, gross negligence, or negligence—
(A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—
(i) any document, written or oral statement, or act which is material and false, or
(ii) any omission which is material, or
(B) may aid or abet any other person to violate subparagraph (A).
(2) **Exception**
Clerical errors or mistakes of fact are not violations of paragraph (1) unless they are part of a pattern of negligent conduct.
(c) **Maximum penalties**
(1) **Fraud**
A fraudulent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed the domestic value of the merchandise.
(2) **Gross negligence**
A grossly negligent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed—
(A) the lesser of—
(i) the domestic value of the merchandise, or
(ii) four times the lawful duties of which the United States is or may be deprived, or
(B) if the violation did not affect the assessment of duties, 40 percent of the dutiable value of the merchandise.
(3) **Negligence**
A negligent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed—
(A) the lesser of—
(i) the domestic value of the merchandise, or
(ii) two times the lawful duties of which the United States is or may be deprived, or
(B) if the violation did not affect the assessment of duties, 20 percent of the dutiable value of the merchandise.

4. 19 U.S.C. § 1595a (1982) reads as follows:
§ 1595a. **Forfeitures and other penalties**
(a) **Importation, removal, etc. contrary to laws of United States**
Except as specified in the proviso to section 1594 of this title, every vessel, vehicle, animal, aircraft, or other thing used in, to aid in, or to facilitate, by obtaining information or in any other way, the importation, bringing in, unlading, landing, removal, concealing, harboring, or subsequent transportation of any article which is being or has been introduced, or attempted to be introduced, into the United States contrary to law, whether upon such vessel, vehicle, animal, aircraft, or other thing or otherwise, shall be seized and forfeited together with its tackle, apparel, furniture, harness, or equipment.
(b) **Penalty for aiding unlawful importation**
Every person who directs, assists financially or otherwise, or is in any way concerned in any unlawful activity mentioned in the preceding subsection shall be liable to a penalty equal to the value of the article or articles introduced or attempted to be introduced.

admissions, and has attempted to depose defendant. Defendant, asserting the fifth amendment privilege against compulsory self-incrimination, has failed to comply with the request for the production, has refused to respond substantively to the request for admissions and, beyond stating his present residence and address, has apparently refused to provide substantive answers to plaintiff's deposition questions. Before the court at this time is plaintiff's motion (1) to order defendant to (a) respond fully to plaintiff's first request for production; (b) respond fully to all questions posed by plaintiff at any deposition taken of the defendant; (c) reimburse plaintiff for actual out-of-pocket expenses in connection with the above-mentioned deposition and (2) to deem admitted the matters set forth in plaintiff's first request for admissions. The first issue to be addressed here is to what extent the fifth amendment privilege against self-incrimination may be raised in an action for penalties under 19 U.S.C. § 1592.

The fifth amendment to the United States Constitution states, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself." Congress intended that section 1592 provide a civil remedial sanction. See *United States v. Murray,* 5 CIT 102, 105–06, 561 F.Supp. 448, 453 (1983); *United States v. Alcatex, Inc.,* 328 F.Supp. 129, 132–33 (S.D.N.Y.1971). Defendant here may still be within the scope of the fifth amendment's self-incrimination clause, however, because the Supreme Court has interpreted the privilege against compulsory self-incrimination as applying in actions other than those labeled as criminal prosecutions. Constitutional protections afforded criminal defendants may apply, despite Congress' intent to create a civil remedy, if the applicable sanctions are "so punitive either in purpose or effect as to negate that intention." *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641,

65 L.Ed.2d 742 (citing *Flemming v. Nestor,* 363 U.S. 603, 616–21, 80 S.Ct. 1367, 1375–78, 4 L.Ed.2d 1435 (1960)), *reh'g denied,* 448 U.S. 916, 101 S.Ct. 37, 65 L.Ed.2d 1179 (1980). In addition, the privilege against compulsory self-incrimination may apply in an action that, although civil in form and not so punitive as to give rise to all criminal procedural safeguards, is "quasi-criminal" in nature. *Ward,* 448 U.S. at 251–54, 100 S.Ct. at 2642–44; *see United States v. United States Coin & Currency,* 401 U.S. 715, 721–22, 91 S.Ct. 1041, 1044–45, 28 L.Ed.2d 434 (1971); *Lees v. United States,* 150 U.S. 476, 480–81, 14 S.Ct. 163, 164–65, 37 L.Ed. 1150 (1893); *Boyd v. United States,* 116 U.S. 616, 633–34, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886). Further, the privilege may apply even in a strictly civil (non "quasi-criminal") action where the testimony sought could subject the person questioned to criminal liability. *See, e.g., Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973) (citing *McCarthy v. Arndstein,* 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924)). In any case, the privilege may be invoked only if the threat of prosecution is "substantial and 'real,' and not merely trifling or imaginary." *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968) (citing *Rogers v. United States,* 340 U.S. 367, 374, 71 S.Ct. 438, 442, 95 L.Ed. 344, *reh'g denied,* 341 U.S. 912, 71 S.Ct. 619, 95 L.Ed. 1348 (1951); *Brown v. Walker,* 161 U.S. 591, 599–600, 16 S.Ct. 644, 647–48, 40 L.Ed. 819 (1896)).

This court has previously concluded that section 1592 is not "so punitive as to 'transform what was clearly intended as a civil remedy into a criminal penalty.'" *Murray,* 5 CIT at 106, 561 F.Supp. at 453 (double jeopardy clause of fifth amendment not applicable in section 1592 action) (quoting *Rex Trailer Co. v. United States,* 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956)).[5] Thus, defendant is clearly not

---

5. *Murray* was decided under the language of section 1592 in effect prior to its amendment in 1978. Pub.L. No. 95–410, Title I, § 110(a), 92 Stat. 888, 893–97 (1978) (penalty of forfeiture

replaced by varying monetary penalties). This amendment, however, is not of the type that would "transform" section 1592 into a criminal statute. If anything, the change makes section

entitled to the litany of protections afforded criminal defendants. A determination that section 1592 is "quasi-criminal," however, would place defendant within the scope of the fifth amendment's privilege against compulsory self-incrimination. *See Ward*, 448 U.S. at 253–54, 100 S.Ct. at 2643–44 (considering whether action was so far criminal in nature to give rise to fifth amendment protection against compulsory self-incrimination despite inapplicability of such protections as those of sixth amendment and double jeopardy clause of fifth amendment) (citing *United States v. Regan*, 232 U.S. 37, 50, 34 S.Ct. 213, 217, 50 L.Ed. 494 (1914) (fifth amendment privilege against compulsory self-incrimination broader than protections of article III and of sixth amendment)).

Defendant relies in large part on *United States v. United States Coin & Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), wherein the Supreme Court held the fifth amendment privilege against compulsory self-incrimination applicable in a civil forfeiture action. The statute at issue in *U.S. Coin*, 26 U.S.C. § 7302, provides that it is unlawful to possess property intended for use in violating provisions of the internal revenue laws and that "no property rights shall exist in any such property." A forfeiture action was instituted, pursuant to this statute, following defendant's conviction for both failing to register as a gambler with the Internal Revenue Service and failing to pay the related gambling tax. The Court stated that " 'proceedings instituted for the purpose of declaring the forfeiture of a man's property *by reason of offences committed by him*, though they may be civil in form, are in their nature criminal' for Fifth Amendment purposes." 401 U.S. at 718, 91 S.Ct. at 1043 (quoting, with emphasis added, *Boyd v. United States*, 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886) (privilege against self-

incrimination applicable in customs forfeiture action.)) In support of the conclusion that the statute in question did in fact target for forfeiture an individual's property "by reason of offences committed by him," the Court noted that remission was provided for in accordance with the customs laws. *U.S. Coin*, 401 U.S. at 721 & n. 8, 91 S.Ct. at 1045 & n. 8 (citing 26 U.S.C. § 7327). Thus, an "innocent owner" could seek remission from the Secretary of Treasury by proving that the " 'forfeiture was incurred without willful negligence or without any intention on the part of the petitioner ... to violate the law....' " *Id.* at 721, 91 S.Ct. at 1045 (quoting 19 U.S.C. § 1618). The Court was convinced, therefore, that the forfeiture statute in question was "intended to impose a penalty only upon those who are significantly involved in a criminal enterprise." *Id.* at 721–22, 91 S.Ct. at 1045. As such, defendant could invoke the fifth amendment privilege against compelled self-incrimination.

The statutory provision for administrative remission referred to in *U.S. Coin* appears, along with section 1592, in Chapter 4 of Title 19 of the United States Code and is applicable to the imposition of a penalty under section 1592.[6] There are, however, several factors which distinguish the instant case from *U.S. Coin*. These distinguishing features become evident when *U.S. Coin* is read in the light of the Court's analysis in *United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 *reh'g denied*, 448 U.S. 916, 101 S.Ct. 37, 65 L.Ed.2d 1179 (1980).

After determining that the statute in *Ward* was neither intended to impose a criminal sanction nor "so punitive either in purpose or effect to negate that intention," 448 U.S. at 248–49, 100 S.Ct. at 2641, the Court went on to consider whether the statute was "quasi-criminal," thereby affording defendant the privilege against

1592 more akin to a purely civil statute. *See* *infra* discussion.

**6.** In addition to its applicability in *U.S. Coin*, remission under § 1618 may be sought by a person interested in property "seized under the

provisions of this chapter, [chapter 4—Tariff Act of 1930]" or by a person "who has incurred, or is alleged to have incurred, any fine or penalty thereunder...." 19 U.S.C. § 1618 (1982 & Supp. II 1984).

compulsory self-incrimination.[7] In this analysis, the *Ward* Court first noted three factors distinguishing the case from *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). First, the penalty of forfeiture in *Boyd* "had absolutely no correlation to any damages sustained by society or the cost of enforcing the law," 448 U.S. at 254, 100 S.Ct. at 2644, whereas the monetary penalty in *Ward* was "much more analogous to traditional civil damages." *Id.* Second, as compared to the forfeiture provision in *Boyd*, which was part of the same statutory section as the provision for imprisonment, the civil and criminal remedies in *Ward* were in separate statutes enacted seventy years apart. *Id.* Third, while in *Boyd* there was the danger that the appellant's testimony could prejudice him in future criminal proceedings, the statute in *Ward* specifically barred the use of statutorily mandated disclosures from use in any future criminal actions, other than in actions for perjury or for giving a false statement. *Id.* Finally, and of greater significance to the *Ward* Court than the three factors distinguishing *Ward* from *Boyd*, the Court found "overwhelming evidence" of a Congressional intent to create "a penalty civil in all respects and quite weak evidence of any countervailing purpose or effect." *Id.* The Court declined, therefore, to extend to respondent the fifth amendment privilege against compulsory self-incrimination.

 The distinctions made by the Supreme Court of *Ward* and *Boyd* are helpful in the case at bar. First, in 1978, Congress changed the remedy for violation of section 1592 from one of forfeiture to imposition of monetary penalties. Pub.L. No. 95–410, Title I, § 110(a), 92 Stat. 888, 893–97 (1978); *see* S.Rep. No. 778, 95th Cong., 2nd Sess. 18–19, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2211, 2230–31; *United States v. One Red Lamborghini and One Black Lamborghini*, 10 CIT ——, 625 F.Supp. 986,

989 & n. 6 (1986), *appeal docketed*, 86–1015 (Fed.Cir. Mar. 17, 1986). Thus, like the statute in *Ward*, section 1592 now more closely resembles "traditional civil damages" than do statutes, like those in *U.S. Coin* and *Boyd*, which provide for forfeiture. That the concerned statute provides for a monetary penalty rather than for forfeiture, however, is not enough to completely distinguish the holdings of *U.S. Coin* and *Boyd*. *See Lees v. United States*, 150 U.S. 476, 14 S.Ct. 163, 37 L.Ed. 1150 (1893) (fifth amendment privilege against self-incrimination applicable under statute imposing fixed monetary penalty). Second, like *Ward*, and unlike both *Boyd* and *U.S. Coin*, the criminal and civil remedies here are contained in separate statutes. This too, as in *Ward*, is evidence that the civil penalty is not "quasi-criminal." As to the third factor, unlike the statute in *Ward*, section 1592 contains no use immunity to prevent a defendant from prejudicing himself with respect to a future criminal prosecution. Nonetheless, the court places little emphasis on this fact, because the threat of future criminal prosecution may justify assertion of the fifth amendment privilege against self-incrimination even in a strictly civil proceeding. *See, e.g., Lefkowitz*, 414 U.S. at 77, 94 S.Ct. at 322. The question of whether section 1592 is "quasi-criminal" is separate and apart from the issue of whether defendant may incriminate himself under other criminal statutes.

 The factor given most weight in *Ward*, Congress' intent to create a civil penalty, as opposed to the statute's "countervailing punitive *purpose or effect*," 448 U.S. at 254, 100 S.Ct. at 2644 (emphasis added), is instructive in the case at bar. Section 1592 can be said to have, to some degree, a punitive effect. First, the penalty imposed under section 1592 differs with the degree of scienter or culpability of the

---

7. Under consideration in *Ward* was § 311(b)(6) of the Federal Water Pollution Control Act. 33 U.S.C. § 1321(b)(6). This section, which has since been amended, provided that "[a]ny owner or operator of any vessel, onshore facility, or offshore facility from which oil or a hazardous substance is discharged in violation of [the act] shall be assessed a civil penalty ... of not more than $5,000 for each offense." *Id.*

defendant. *See supra* note 3. This link between the degree of culpability and the penalty imposed is essential to retribution, a principle of punishment rather than of civil damages. *See* Wheeler, *The Constitutional Case for Reforming Punitive Damages Procedures,* 69 Va.L.Rev. 269, 338 (1983) (citing I. Kant, *The Philosophy of Law* 194–98 (W. Hastie Trans. 1887); C.W.K. Mundle, *Punishment and Desert* in *Philosophy of Punishment* 65, 71–74 (H. Acton ed. 1969)); *cf. Ward,* 448 U.S. at 256–57, 100 S.Ct. at 2645 (Blackmun, J., concurring) (in deciding whether to classify statute as "quasi-criminal," discounted importance of scienter as factor because it was not mentioned on face of statute). In addition, a defendant in a section 1592 action may be forced to pay the greatest penalty applicable under that provision even if his unlawful conduct did not result in the loss of any revenue to the United States. *See* 19 U.S.C. § 1592(c) (1982) (*supra* note 3) (penalty for fraud may equal domestic value of merchandise regardless of duties lost). Furthermore, under 19 U.S.C. § 1592(d) (1982), any actual duties owing remain owing, whether or not a penalty is assessed.[8] *Compare with Ward,* 448 U.S. at 256, 100 S.Ct. at 2645 (Blackmun, J., concurring) (civil and compensatory nature of statute evidenced by provision that collected assessments be placed in revolving fund used to defray cleanup expenses); *see* Wheeler, 69 Va.L.Rev. at 338 (civil penalty based on harm caused is less likely to have punitive purpose than civil penalty based on culpability). The statute in question, therefore, appears to have, at least in part, a punitive "effect," whether or not Congress had that "purpose" in mind.

On the other hand, section 1592 has a remedial effect as well. Even prior to the 1978 amendment, this court pointed to the various costs of enforcing section 1592 and to the injury to the government of frustration of its policies through violations of the customs laws, and therefore characterized section 1592 forfeiture as a remedial measure akin to liquidated damages. *Murray,* 5 CIT at 106–07, 561 F.Supp. at 453 (quoting *Alcatex,* 328 F.Supp. at 132–33). This remedial function was bolstered by the amendment of section 1592 which, as noted, now links, under certain circumstances, the penalty imposed to the lawful duties of which the United States was deprived. That is, the maximum penalties vary in amount from the domestic value of the merchandise (for fraudulant violations), to the lesser of either a percentage of the domestic value of the merchandise or a multiple of the duties lost (for gross negligence and negligence).[9] 19 U.S.C. § 1592(c) (1982) (*supra* note 3).

Further, the legislative history makes clear that an important motivation for amending section 1592 was Congress' desire to alleviate the harsh consequences of the forfeiture penalty. The Senate report notes that a problem with the former section 1592 was that once having found a violation, the courts had no alternative but to order forfeiture. This penalty was thought too severe in many cases. S.Rep. No. 778 at 2, 1978 U.S.Code Cong. & Ad. News at 2213. Thus, the trier of fact may award penalties in an amount far below the maximum allowable, presumably based on any rational reason including the degree of damages sustained. By replacing forfeiture with varying monetary penalties, which are subject to reduction by the trier of fact and which, to varying degrees, will

---

**8.** The court notes, however, that punitive damages may be assessed in some purely civil suits in addition to compensatory damages, and that the amount of purely civil punitive damages, do not necessarily relate to the amount of injury suffered. *See, e.g., City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266–67, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616 (1981) (punitive damages *not* intended to compensate injured party but rather to punish tortfeasor and deter similar conduct) (citing Restatement (Second) of Torts,

§ 908 (1979); W. Prosser, *Law of Torts* 9–10 (4th ed. 1971)).

**9.** If a grossly negligent or negligent violation of the statute has no impact on the assessment of duties, the maximum penalty is measured by a percent of the dutiable value of the merchandise. 19 U.S.C. §§ 1592(c)(2), (3) (1982) (*supra* note 3).

relate to damages, Congress has made section 1592 largely remedial, rather than "punitive," both in "purpose" and "effect." [10]

■ As in *Ward*, there is strong evidence of Congressional intent to create a civil remedial penalty and a relatively weak punitive purpose or effect. When coupled with the relevant distinctions made in *Ward* of the statute at issue in *Boyd*, which distinctions have also been made with respect to section 1592, the court concludes that section 1592 is *not* "quasi-criminal." [11] Thus, defendant here can invoke the fifth amendment privilege against compulsory self-incrimination only if compelled testimony in the case at bar would threaten him with criminal prosecution in a separate action.

■ It is apparent that the only action in which defendant's testimony in the case at bar might be used against him is the suit, evidently pending in federal district court, brought by the United States under 19 U.S.C. § 1595a(b) (1982).[12] (*supra* note 4). As plaintiff points out, the legislative history to section 1595a(b) indicates that this provision was intended as a civil penalty. *See* S.Rep. No. 2326, 83rd Cong. 2d Sess. 6–7, *reprinted in* 1954 U.S.Code Cong. & Ad.News 3900, 3905–06 (eliminat-

ing criminal sanction as "practical duplication" of 18 U.S.C. § 545). The court's analysis of 19 U.S.C. § 1592 earlier in this opinion makes clear, however, that this does not end the court's inquiry. The court must determine whether the statute is "quasi-criminal" for fifth amendment self-incrimination purposes. *See Ward*, 448 U.S. at 253–54, 100 S.Ct. at 2643–44. Obviously, if defendant has a fifth amendment privilege applicable to testimony sought to be used against him in a section 1595a(b) action, absent use immunity, that privilege would be meaningless if he could be forced to surrender it here.

In upholding the constitutionality of a forfeiture action brought pursuant to subsection (a) of section 1595a, the Court of Claims noted that this subsection triggers fourth amendment protections and the fifth amendment privilege against compelled self-incrimination. *Doherty v. United States*, 500 F.2d 540, 544 (Ct.Cl.1974). Plaintiff challenges the applicability of this statement in *Doherty* to the case at bar on two grounds, neither of which the court finds persuasive. First, plaintiff notes that the privilege against self-incrimination was not raised in *Doherty* and, thus, that the court's statement regarding the privilege is

---

**10.** The remedial nature of § 1592 is also evidenced by its authorization, in limited circumstances, of seizure under subsection (c)(5). Seizure of the merchandise in question may be effected if there is reasonable cause to believe that a person has violated § 1592(a) and is insolvent or beyond the jurisdiction of the United States, or if other compelling reasons exist. If the merchandise is of the type which may be released into commerce, it is to be returned upon the making of a deposit. 19 U.S.C. § 1592(c)(5) (1982). Under this same provision, if the fine levied under § 1592(c) is not paid within the time specified by law the property may be "forfeited", although 19 U.S.C. § 1613(b) (1982 & Supp II 1984) calls for payback, after sale of such "forfeited" property, of any proceeds in excess of the penalty assessed. Thus, seizure and "forfeiture" here may be seen as part of the overall remedial scheme of § 1592, much like prejudgment attachment in other civil suits, rather than as a form of punishment for criminal conduct.

**11.** One might argue that § 1592 should be analyzed in a piecemeal fashion, and that the fraud provisions are "quasi-criminal," while the negli-

gence provisions are not. The court believes that, in order to determine Congressional intent, the statute must be viewed as a whole, inasmuch as Congress enacted the provisions together as part of one scheme for assessing civil penalties in certain circumstances.

**12.** The court notes that defendant's alleged conduct is apparently actionable as a criminal offense under 18 U.S.C. § 545 (1982). Defendant has entered into a plea bargain agreement covering criminal charges brought under § 545 for two of the importations in question, however, and a § 545 action for the third importation would be barred by the statute of limitations. *See* 18 U.S.C. § 3282 (1982). Thus, defendant is in no danger of further prosecution under § 545 and, therefore, cannot invoke the fifth amendment privilege based on potential prosecution under that statute. Civil forfeiture under § 545 might be considered "quasi-criminal", but the statute of limitations has run on such an action, as well. 19 U.S.C. § 1621 (1982).

dicta. Although this characterization may be technically correct, the accuracy of the court's statement is supported by Supreme Court precedent. In *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), the Court was confronted with a statute which, although in the context of a liquor control law, like section 1595a(a), called for the forfeiture of vehicles used to effect the illegal transportation of articles. It was clear to the Court that forfeiture under the law in question was "a penalty for the criminal offense." *Id.* at 701, 85 S.Ct. at 1251. Following the lead of *Boyd, supra,* the Court held that the law was "quasi-criminal" and, as such, the exclusionary rule barred the admissibility, in the forfeiture proceedings, of evidence seized in violation of the fourth amendment. *Id.* at 700–02, 85 S.Ct. at 1250–51. Therefore, it is evident that *Doherty's* characterization of section 1595a(a), with respect to the fourth amendment, is accurate, and the court will impose no narrower construction on the fifth amendment privilege against compulsory self-incrimination. *See Boyd,* 116 U.S. at 634, 6 S.Ct. at 534 (fourth amendment protections and fifth amendment self-incrimination clause found applicable to forfeiture action). Therefore, the court follows the view expressed in *Doherty* that the fifth amendment self-incrimination clause applies to section 1595a(a).

Plaintiff's second challenge to the relevance of *Doherty* to the case at bar is that the action currently pending in district court against defendant is for a monetary penalty under section 1595a(b) rather than for forfeiture under section 1595a(a). Plaintiff argues, in essence, that the appli-

cability of the self-incrimination clause to section 1595a(a) would be based on the propositions of law governing forfeitures, and, therefore, has no bearing on an action for a monetary penalty under section 1595a(b). As noted earlier, however, the Supreme Court has held the fifth amendment privilege against compulsory self-incrimination applicable to a statute calling for a fixed monetary penalty. *Lees v. United States,* 150 U.S. 476, 14 S.Ct. 163, 37 L.Ed. 1150 (1893).[13] Thus, that section 1595a(a) provides for forfeiture while section 1595a(b) provides for a monetary penalty is insufficient to distinguish the two provisions for purposes of applying the privilege against compulsory self-incrimination. Further, the relative severity of the respective penalties does not distinguish these two subsections as to the fifth amendment privilege. In fact, there is simply no way to tell, apart from the facts of a given case, whether the value of that which is forfeited under section 1595a(a) (anything from a donkey to a jet) will be greater or less than the monetary penalty imposed under section 1595a(b), which is determined exclusively by the value of the imported article(s). Furthermore, unlike section 1592, there is no provision for imposition of a lesser penalty by the court or jury. Thus, the trier of fact is precluded from considering the amount of damage suffered. Therefore, there appears to be no greater likelihood that the penalty imposed under section 1595a(b) will more closely approximate the costs of enforcement and the damage inflicted than will the penalty imposed under section 1595a(a).[14] Furthermore, the two subsections of sec-

---

**13.** The Supreme Court's adherence to this view is supported by its opinion in *Ward.* Although the *Ward* Court held the privilege inapplicable to the statute in question in that case, its reasoning went far beyond an assertion that the statute called for a monetary penalty rather than for forfeiture. 448 U.S. at 253–54, 100 S.Ct. at 2643–44 (*see supra* discussion).

**14.** The court notes that there is a difference between the relative scope of these sections. Section 1595a(a) calls for the forfeiture of that which is used in any way to import, conceal,

harbor, etc., articles unlawfully introduced into the United States. 19 U.S.C. § 1595a(a) (1982) (*supra* note 4). By comparison, section 1595a(b) imposes a monetary penalty, equal to the value of the imported article(s), on one who aids, or is in any way involved, in the unlawful conduct described in section 1595a(a). 19 U.S.C. § 1595a(b) (1982) (*supra* note 4). Certainly, this difference in scope cannot be the basis for holding the self-incrimination clause inapplicable to section 1595a(b), the broader of the two provisions.

tion 1595a work together to punish those involved in illegal importations. Thus, apparently, one who hides illegal merchandise in a vehicle could forfeit the vehicle and be liable for the value of the hidden merchandise as well. Both provisions are part of a single statutory scheme intended to address illegal conduct.

Finally, the conclusion reached in *U.S. Coin* that the statute in question imposed a penalty "*'by reason of offences committed by* [an individual],'" 401 U.S. at 718 (quoting, with emphasis added, *Boyd*, 116 U.S. 616, 634, 6 S.Ct. 524, 534 (1886)), seems equally fitting to both subsections (a) and (b) of section 1595a. This conclusion is supported by the fact that, presumably, administrative remission under 19 U.S.C. § 1618 applies to section 1595a, where lesser degrees of scienter are involved, just as it applied to the statute in question in *U.S. Coin*. *See supra* note 5 and accompanying text. Unlike section 1592, section 1595a(b) raises no considerations which lessen the impact of this factor. The court is unable to discern any meaningful distinctions between the statute at issue in *U.S. Coin* and section 1595a, or between subsections (a) and (b) of section 1595a, with regard to the fifth amendment privilege against self-incrimination. The court must conclude, therefore, that section 1595a(b), like section 1595a(a), is a "quasi-criminal" sanction rather than a strictly civil remedial measure. As such, to the extent that defendant's testimony in the section 1592 action at bar presents a real and appreciable threat of prosecution under 19 U.S.C. § 1595a(b) (1982), defendant may invoke the privilege against compulsory self-incrimination.[15]

Plaintiff objects that, even if the fifth amendment privilege may be invoked in the case at bar, defendant has failed to raise it properly. A blanket refusal to comply with a request for production, to respond to questions raised at a deposition, or to respond to a request for admissions, is unacceptable. *See General Dynamics Corp. v. Selb Manufacturing Co.*, 481 F.2d 1204, 1212 (8th Cir.1973), *cert denied*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). Rather, "[t]he privilege must be asserted with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify." *Id.* (citing *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)). Accordingly, the court directs defendant to specify, as to each question or request to which he objects, "the grounds for objection, and, wherever possible without self-incrimination, to what degree a responsive answer might have a tendency to incriminate [him]." *Gatoil, Inc. v. Forest Hill State Bank*, 104 F.R.D. 580, 582 (D.Md.1985) (citing *de Antonio v. Solomon*, 41 F.R.D. 447, 449–50 (D.Mass.1966)). Plaintiff may then file a motion to compel discovery if there is any further dispute as to defendant's right to invoke the privilege against self-incrimination, in the light of this court's holding regarding the limited applicability of the privilege to the case at bar.

Finally, plaintiff has moved for reimbursement of expenses incurred in the unsuccessful attempt to depose defendant and to have deemed admitted the matters set forth in plaintiff's first request for admissions. Although defendant has overstated the scope of the fifth amendment privilege and has invoked the privilege in an improper form, his conduct, thus far, does not warrant these sanctions.

In conclusion, defendant may invoke the fifth amendment privilege against compulsory self-incrimination in this section 1592 action only to the extent that his testimony presents a real and appreciable threat of prosecution under section 1595a(b). In ad-

---

15. The court finds it premature to address what inferences might be drawn in the § 1592 action at bar from defendant's assertion of the fifth amendment privilege in this strictly civil action. *See Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) (prison disciplinary proceeding) (quoting 8 J. Wigmore, *Evidence* 439 (McNaughton rev. 1961) (fifth amendment does not preclude negative inference "'where the privilege is claimed by a party to a civil cause'" (emphasis omitted)).

dition, to properly invoke the fifth amend-
ment privilege, defendant must raise it in
the manner described in this opinion.