UNITED STATES of America, Plaintiff,

v.

F.H. FENDERSON, INC. Defendant.

Court No. 84–07–01008.

United States Court of International Trade.

March 26, 1987.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Dept. of Justice, Commercial Litigation Branch, Civ. Div., Platte B. Moring, III, Washington, D.C., for plaintiff.

Doherty and Melahn, William E. Melahn, Boston, Mass., for defendant.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

The parties have submitted the following stipulation of facts and supporting documents, on the eve of trial, to assist the Court in resolving three legal issues. Both parties have also separately submitted their statement of issues which are essentially the same. The first issue presented is whether or not section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (1980) (§ 1592), permits the Department of the Treasury, United States Customs Service (Customs) to assess the exporter of certain merchandise, Landry and Landry (1975) Ltd., (Landry) with one penalty and assess the customhouse broker as importer of record/nominal consignee, F.H. Fenderson, Inc., (Fenderson) with another penalty on the same merchandise. The second issue involves whether or not Customs' mitigation of penalty and settlement of its case against Landry pursuant to section 618 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1618 (1980), without reserving its rights to assert or continue the penalty claim against Fenderson discharges such claim. The final issue asks whether or not the voluntary tender of supplemental duties by Fenderson on behalf of Landry after both have received prepenalty notices constitutes a prior disclosure under § 1592(c)(4) and 19 C.F.R. § 162.74 (1981) when the District Customs officer did not refer the request to the Office of Investigations in accordance with 19 C.F.R. § 162.-74(b).

### Uncontroverted Facts

The following facts have been stipulated to by both parties: From approximately May 1981, to and including September 1981, the defendant, F.H. Fenderson, Inc., a customhouse broker, as importer of record/nominal consignee, entered, introduced, or caused to enter or introduce merchandise (crabmeat) from Canada into the Commerce of the United States at the Port of Calais, Maine under cover of the following seven consumption entries on behalf of Landry, the Canadian exporter:

| Entry Number | Date of Entry |
| --- | --- |
| 163092 | 5/22/81 |
| 163178 | 6/1/81 |
| 163224 | 6/4/81 |
| 163431 | 6/25/81 |
| 163458 | 6/29/81 |
| 164011 | 8/28/81 |
| 164269 | 9/24/81 |

On each of the pro forma invoices accompanying the seven entries in question, Landry certified the "currency of value" was Canadian. On each of the Special Customs invoices accompanying the entries in question, (Entry No. 163431 had no Special Customs invoice), Landry stated the invoice

price for the merchandise involved and certified Canadian currency was used. Fenderson, as importer of record/nominal consignee, filed the seven consumption entries in question with Portland Customs on behalf of Landry utilizing the invoice documents prepared by Landry and converted the invoiced amount on each of the consumption entries from the Canadian dollar amount certified by Landry in the invoices to an equivalent amount in United States dollars.

On September 30, 1981, the District Director of Customs at Portland, Maine (District Director) issued a prepenalty notice to Landry covering the seven entries which are at issue in this case and five subsequent consumption entries for crabmeat filed by Fenderson on behalf of Landry with Portland Customs. The District Director also issued, on the same day, a prepenalty notice to Fenderson, covering the seven consumption entries. The District Director did not refer either the Fenderson or Landry penalty cases to the Customs Office of Investigations.

On October 21, 1981 Mr. Edgar G. Cook of Fenderson sent a letter to the District Director in reference to the prepenalty notice issued to Landry and enclosed a check drawn on a Canadian bank from Landry in the amount of $1,657.73 for the potential loss of revenue incurred from the difference in United States and Canadian dollar amounts stated with the consumption entries. The check was returned to Mr. Cook by the Assistant District Director of Customs in Portland (Assistant District Director) on October 23, 1981 because it was drawn on a Canadian bank and was deemed non-negotiable in United States funds.

On October 26, 1981, Mr. Cook of Fenderson sent a letter to the District Director in reference to the prepenalty notice issued to Fenderson admitting that it had, indeed, filed entries with incorrect dutiable value but contended it had no knowledge at the time of the entry the value was incorrect. Government Exhibit no. 8. The letter also referred to the entries enumerated in the prepenalty notice and included a full discus-

sion of its interpretation of the facts and circumstances surrounding the violation.

On November 3, 1981, Mr. Cook of Fenderson, sent a letter to the District Director with an enclosed check for $1,657.73, representing a voluntary tender of the supplemental duties on the entries covered by the Landry prepenalty notice. A receipt was issued by Customs on November 5, 1981 which stated "Acct. Class Code 72, Voluntary Tender of Supplemental Duties." Customs did not treat the voluntary tender as a prior disclosure.

On November 4, 1981 the Assistant District Director issued a penalty notice to Landry in the amount of $6,630.92. Counsel for Landry submitted a petition for mitigation of the Landry penalty to the District Director by letter dated November 24, 1981. A decision letter was sent on January 18, 1982 from the District Director to Landry mitigating the Landry penalty to $3,315.46. This amount was forwarded to the District Director by Mr. Cook on behalf of Landry by memoranda dated March 4, 1982 and was accepted by Customs which issued a receipt on March 4, 1982 stating "Acct. Class Code 32, Payment of Mitigated Penalty." At the time of this acceptance, Customs did not reserve its rights to assert or continue the penalty claim against Fenderson.

On November 6, 1981, the Assistant District Director also issued a penalty notice to Fenderson in the amount of $1,668.16. Mr. Robert T. Fenderson of Fenderson submitted a petition for remission of the Fenderson penalty to the District Director on January 3, 1982. On January 11, 1982, the District Director sent a decision letter to Mr. Fenderson mitigating the Fenderson penalty to $250.00. Mr. Fenderson responded with a supplemental petition concerning the Fenderson penalty on February 7, 1982, appealing the decision of the District Director on Fenderson's first petition for remission and requesting review by the Regional Commissioner for a waiver of the penalty. On February 23, 1982, the District Director sent a letter to Mr. Fenderson concerning Fenderson's request for documents referenced in the supplemental

petition, enclosing certain documents requested. On February 9, 1983, the Regional Commissioner of Customs in Boston, Massachusetts sent a decision letter on Fenderson's supplemental petition to the District Director. The decision letter of the Regional Commissioner was forwarded to Fenderson by the District Director on February 18, 1983. The decision letter recognized the facts of the case and the mitigation of the penalty to $250.00 due to Fenderson's lack of financial benefit from the insufficient deposited duties, and affirmed the decision of the District Director that Fenderson was at least negligent in its actions.

### Background

On December 10, 1985, Plaintiff Government (Government) moved for summary judgment in this case on the grounds the allegations set forth in the complaint amounted to negligence *per se* and there were no genuine issues as to any material fact. On March 5, 1986, Defendant Fenderson responded to Government's motion for summary judgment alleging there was, indeed, a dispute as to some material facts on the negligence claim. On the same day, Fenderson also filed a cross motion for summary judgment raising four legal issues and asserting there existed no genuine issues as to any material fact. On April 9, 1986, Government responded to Fenderson's cross motion for summary judgment and maintained there were no genuine issues as to any material fact in the action. Both parties filed supplemental briefs.

On December 5, 1986, this Court issued a decision denying both motions for summa-

ry judgment. *United States v. F.H. Fenderson, Inc.*, Slip Op. 86–126 (December 5, 1986) [Available on WESTLAW DCTU database]. On January 30, 1987, this Court entered an order designating the time, date, and place of trial.

Counsel for both parties now come before this Court with a joint motion for the resolution of legal issues prior to trial. It is in the interest of a just, speedy, and inexpensive determination of this action that both parties have consulted and prepared a stipulation of facts and submitted the same with this motion on March 16, 1987. Trial is set for April 27, 1987 in Portland, Maine.

### Discussion

A motion by both parties for judgment rendered upon certain issues in controversy in this case has been filed pursuant to Rule 1 and 56(c) of the Rules of this Court. The first issue before the Court is whether or not § 1592 permits Customs to assess the exporter of certain merchandise with one penalty and assess Fenderson, the customhouse broker acting as importer of record/nominal consignee with another penalty on the same merchandise. This is substantially the form in which Government presented the issue. Fenderson has penned this issue in a different but significant way: "[w]hether 19 U.S.C. Sec. 1592 permits Customs to assess multiple penalties for the same alleged violation?" Defendant's submitted issues filed March 16, 1987. Both issues will be addressed.

Duty enforcement penalties are set out in § 1592,[1] which "provides penalties for

---

**1.** Section 1592 provides in relevant part:
  **(a) Prohibition.—**
    **(1) General rule.**—Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty thereby, no person, by fraud, gross negligence, or negligence—
    (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—
    (i) any document, written or oral statement, or act which is material and false, or
    (ii) any omission which is material, or
    (B) may aid or abet any other person to violate subparagraph (A).

  **(2) Exception.**—Clerical errors or mistakes of fact are not violations of paragraph (1) unless they are part of a pattern of negligent conduct.
  . . . .
  **(c) Maximum penalties.—**
    **(1) Fraud.**—A fraudulent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed the domestic value of the merchandise.
    **(2) Gross negligence.**—A grossly negligent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed—

fraudulent, grossly negligent and negligent acts committed during the importation of merchandise into the United States, procedures for imposing such penalties, and *de novo* review of such penalty claims in the Court of International Trade." *United States v. Priority Products, Inc.,* —— CIT ——, 615 F.Supp. 591, 592 (1985).

Specifically, § 1592(a)(1), provides "no person" may, by fraud, gross negligence, or negligence, deprive the United States of lawful duties. Section 1592(c) establishes the amount of the civil penalty as punishment for each specific and distinct violation enumerated in subsection (a), paragraph (1). In subsection (c), "the penalty imposed . . . differs with the degree of scienter or culpability of the defendant." *United States v. Gordon,* —— CIT ——, 634 F.Supp. 409, 414–15 (1986). There are three separate categories of assessments for penalties depending on whether or not the violation has been committed by fraud, gross negligence or negligence.

Fenderson argues the assessment of penalties against Landry and itself is contrary to the statute in that the assessment is an imposition of multiple penalties for one violation. Government contends there were two distinct violations committed by Landry and Fenderson; these violations were different in substance as well as in culpability even though they were committed on the same consumption entries. This Court refers to the various documents transmitted between the parties.

The penalty notice issued by Customs on November 6, 1981 to F.H. Fenderson included the following:

> (A) the lesser of—
> (i) the domestic value of the merchandise, or
> (ii) four times the lawful duties of which the United States is or may be deprived, or
> (B) if the violation did not affect the assessment of duties, 40 percent of the dutiable value of the merchandise.
> **(3) Negligence.**—A negligent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed—
> (A) the lesser of—
> (i) the domestic value of the merchandise, or
> (ii) two times the lawful duties of which the United States is or may be deprived, or

3. Laws and Regulations Violated:
   Title 19, U.S. Code, Sections 1484, 1485, and 1592. Sections 141.86 and 143.13, Customs Regulations (Title 19, CFR, 141.86 and 143.13).

4. Facts Establishing the Violation:
   F.H. Fenderson, Inc. as agent for Landry & Landry (1975) Ltd., filed the entries enumerated under Item 2 above with an incorrect dutiable value. Invoices submitted with the entries stated the transaction was in Canadian currency. The payment for the merchandise was actually in United States dollars. By converting the invoiced amount to United States dollars, the net entered value (dutiable value) was improperly reduced.

The prepenalty notice issued on September 30, 1981 and the penalty notice [2] issued on November 4, 1981 by Customs to Landry included the following:

3. Laws and Regulations Violated:
   Title 19, U.S.Code, Sections 1484, 1485 and 1592. Sections 141.86 and 143.13 Customs Regulations. (Title 19 CFR 141.86 and 143.13.)

4. Facts Establishing the Violation:
   Landry & Landry (1975) Ltd. shipped crabmeat to the United States and presented false invoices to the U.S. Customs Service. The invoices set forth that the transaction between the shipper and the consignee involved Canadian currency. Documentation in the files establishes that the United States consignees made payment in United States dollars. By stating that

> (B) if the violation did not affect the assessment of duties, 20 percent of the dutiable value of the merchandise.

19 U.S.C. § 1592(a), (c) (1980).

**2.** The November 4, 1981 penalty notice stated the following:

> There are no changes in the information concerning the violation which is set forth in the Prepenalty Notice and Prepenalty Statement of September 30, 1981. Copies of the Prepenalty Notice and Prepenalty Statement are attached hereto as Exhibits A and B and are made a part hereof.

the invoice values were in Canadian currency, the dutiable value was reduced because of the difference in value between Canadian and United States dollars. The false statement as to type of currency deprived the United States of duty lawfully due.

Fenderson's letter in response to a prepenalty notice sent by Customs on September 30, 1981 states the following: "We agree at this time that [the facts establishing the violation] of the notice appears to be correct, that we did file entries with incorrect dutiable value." [3]

The statute in question on this issue specifies: "no person ... may enter ... merchandise into the commerce of the United States by means of any document ... or act which is material and false, or ... may aid or abet any other person to violate [the above]." 19 U.S.C. 1592(a)(1). The documents sent to Landry from Customs alleged the gross negligent act of presenting invoices containing false statements which constituted a violation. The documents sent to Fenderson from Customs alleged the negligent act of filing entries with incorrect dutiable value which constituted a violation. Both violations alleged were the result of separate and distinct acts committed by separate and distinct parties constituting separate and distinct violations.

■ It is true Customs may not assess multiple penalties for the same violation. The resultant amount could conceivably far outreach that of the value of the merchandise entered [4] and run contrary to the congressional intent behind the amending of § 1592 in 1978.[5]

■ Fenderson is correct in stating Customs may not assess multiple penalties for a single violation; but in the present situation it appears there could be two separate violations.[6] Government is correct in asserting Customs is permitted under § 1592 to assess separate penalties for separate violations on the same merchandise. Therefore, the Court holds Government may endeavor to assess Landry and Fenderson separate penalties for separate violations, assuming, of course, the facts support such an endeavor.

The second issue before this Court is whether or not Customs' settlement of its penalty case against Landry discharges Customs' claim against Fenderson. Customs settled its case against Landry after receiving Landry's petition for remission of

---

**3.** The Fenderson prepenalty notice's "Facts" paragraph was essentially the same as the "Facts" paragraph in the Fenderson penalty notice. It stated:

4. Facts Establishing the Violation:
F.H. Fenderson, Inc., as agent for Landry & Landry (1975) Ltd., filed the entries enumerated under Item 2 above with an incorrect dutiable value. Invoices submitted with the entries stated the transaction was in Canadian currency. The payment for the merchandise was actually in United States dollars. By converting the invoiced amount to United States dollars, the net entered value (dutiable value) was improperly reduced.

**4.** An example of such a situation could exist where a partnership of 30 individuals is determined by Customs to have committed a single negligent violation. Allowing Customs to assess 30 multiple penalties upon 30 individuals for a single negligent violation would end in too severe a result.

**5.** It has been observed by this Court:
[t]he legislative history makes clear that an important motivation for amending section 1592 [in 1978] was Congress' desire to allevi-

ate the harsh consequences of the forfeiture penalty. The Senate report notes that a problem with the former section 1592 was that once having found a violation, the courts had no alternative but to order forfeiture. This penalty was thought too severe in many cases. S. Rep. No. 778 at 2, 1978 U.S. Code Cong. & Ad. News at 2213. Thus, the trier of fact may award penalties in an amount far below the maximum allowable, presumably based on any rational reason including the degree of damages sustained. By replacing forfeiture with varying monetary penalties, which are subject to reduction by the trier of fact and which, to varying degrees, will relate to damages, Congress has made section 1592 largely remedial, rather than "punitive," both in "purpose" and "effect."
*Gordon,* 634 F.Supp. at 415–416 (footnote omitted).

**6.** This is not a foreign concept in the law. Where enforcement statutes are enacted concerning whether or not criminal or civil penalties are to be assessed, it is common to hold violators severally responsible although the degree of responsibility is often less for one violator than for another.

the penalty, mitigating the Landry penalty pursuant to 19 U.S.C. § 1618, and collecting the penalty. Fenderson contends this constituted a complete release of any further responsibility on the part of all potential persons concerned in the case. Because Customs, Fenderson argues, settled its penalty case with the actual "wrongdoer" Landry, it is precluded from seeking additional penalties against the defendant. This argument appears to be predicated upon the belief there was only one violation, and therefore only one claim should be assessed in satisfaction of the penalty to be paid on account of that violation.

■ Government states Customs issued separate prepenalty notices to Landry and Fenderson establishing causes of action on different violations committed by different violators. These notices did not hold Fenderson and Landry jointly and severally liable for the violation of § 1592. Customs treated the cases separately receiving separate petitions for mitigation from Fenderson and counsel for Landry. This Court agrees. When Customs mitigated and settled its case against Landry, the payment by Landry for its gross negligence violation did not terminate any cause of action Customs had against Fenderson for the alleged negligence. There was no "release" of Customs' case against Fenderson and there was no need to reserve any right to enforce this matter.

The final issue before this Court is whether or not the voluntary tender of supplemental duties by Fenderson on behalf of Landry after both have received prepenalty notices constitutes a prior disclosure under § 1592(c)(4) and 19 C.F.R. § 162.74, when the District Customs officer did not refer the request to the Office of Investigations in accordance with 19 C.F.R. § 162.74(b).

Section 1592(c)(4) states in pertinent part:

**Prior disclosure.**—If the person concerned discloses the circumstances of a violation of subsection (a) of this section *before,* or without knowledge of, *the commencement of a formal investigation of such violation,* with respect to such violation, merchandise shall not be

seized and any monetary penalty to be assessed under subsection (c) of this section shall not exceed—

. . . .

(B) if such violation resulted from negligence or gross negligence, the interest (computed from the date of liquidation at the prevailing rate of interest applied under section 6621 of Title 26) on the amount of lawful duties of which the United States is or may be deprived *so long as such person tenders the unpaid amount of the lawful duties at the time of disclosure* or within 30 days, or such longer period as the appropriate customs officer may provide, *after notice by the appropriate customs officer of his calculation of such unpaid amount.*

The person asserting lack of knowledge of the commencement of a formal investigation has the burden of proof in establishing such lack of knowledge.

19 U.S.C. § 1592(c)(4) (emphasis added).

The statute states prior disclosure occurs when a person involved with the violation in question discloses the circumstances "before ... the commencement of a formal investigation of such violation." 19 U.S.C. § 1592(c)(4). When a formal investigation is considered to be commenced is set forth in 19 C.F.R. § 162.74(c), which states in pertinent part:

*Commencement of formal investigation.* A formal investigation is considered to be commenced:

(1) In the case of a referral by an import specialist or other Customs officer of a matter involving the disclosing party and the disclosed information for investigation of a possible violation of 19 U.S.C. 1592, on the date the matter was referred to the Office of Investigations;

(2) In the case of referral by an import specialist or other Customs officer of a request for value, classification or other technical investigation, on the date recorded in writing by an investigating agent as the date on which discovered facts and circumstances which caused him to believe that the possibility of a violation of 19 U.S.C. 1592 existed with

respect to the disclosing party and the disclosed information;

....

(6) In all other cases, on the date recorded in a Report of Investigation, Customs Form 23, as the date on which an investigator was assigned to investigate possible violations of 19 U.S.C. 1592 by the disclosing party with respect to the disclosed information.

19 C.F.R. § 162.74(c)(1), (2), (6).

When a referral occurs is also set forth in 19 C.F.R. § 162.74(b), which states: *"Referral for investigation.* Any disclosure of a violation shall be referred immediately by the district director to the appropriate field office of the Office of Investigations. Upon completion of its investigation, the field office immediately shall return the disclosure, together with its report, to the district director for appropriate action." 19 C.F.R. § 167.74(b).

■ It is clear, under the instant circumstances involved and at the time of the events in 1981, a formal investigation is said to commence when the disclosure of the violation is referred immediately to a Customs investigation agent of the appropriate field office of the Office of Investigations and certain actions or events occur pursuant to the regulations. If that has not happened, which the agreed statment of facts establishes, then a formal investigation has not commenced. The District Director did not refer the request to the Office of Investigations and therefore failed to follow its own regulations to insure the commencement of a formal investigation would be established before a prior disclosure. Therefore, any prior disclosure made, pursuant to the statute and the regulations, should be acknowledged if received before this event.

■ This final issue before the Court focuses in on whether Fenderson's tender of supplemental duties on behalf of Landry constitutes a prior disclosure. A prior disclosure is one that discloses the circumstances of a violation by the person concerned in the violation within the time frame as discussed above. 19 C.F.R. § 162.74(a). Fenderson's letter of October 21, 1981, accompanying the supplemental tender, refers to the prepenalty notice issued to Landry and states "we enclose ... a check for duties that apparently should have been paid on entries involved in the notice." Government's Exhibit no. 5. The letter also refers to the facts surrounding the "alleged" gross negligent act and expresses doubt as to the wrongfulness of the act. The letter concludes: "At any rate ... enclosed [is] a check for the Potential [sic] loss of revenue...." *Id.* This Court holds such a letter and tender of supplemental duties submitted by Fenderson on behalf of Landry does "disclose the circumstances of [the Landry] violation of [§ 1592]" and therefore constitutes a prior disclosure. *See* 19 C.F.R. § 162.74(a).

■ Fenderson also sent a letter to the District Director on October 26, 1981 admitting that it had, indeed, filed entries with incorrect dutiable value but contended it had no knowledge at the time of the entry the value was incorrect. Government Exhibit no. 8. The letter also referred to the entries enumerated in the prepenalty notice and included a full discussion of its interpretation of the facts and circumstances surrounding the violation. On November 3, 1981, Fenderson voluntarily tendered a check in the amount stated as a supplemental desposit of estimated duties on the entries in question and listed the entries with each estimated duty. Customs received this check and issued a receipt of voluntary tender of supplemental duties on November 5, 1981, prior to the issuance of its penalty notice to Fenderson on November 6, 1981. This is a sufficient prior disclosure by Fenderson of circumstances involving the Fenderson violation.

*Conclusion*

For the reasons stated, the joint motion for the resolution of legal issues prior to trial has been granted and the conclusions as to each issue decided shall be entered accordingly. Since this Court has held there was a prior disclosure of the violation by Fenderson and a tender of actual loss of duties within the specified time period pur-

suant to § 1592(c)(4)(B) and 19 C.F.R. § 162.74(c); and since this determination ultimately settles the disposition of this matter; and since any interest that might be due on the duties paid appear *de minimis*, this action is dismissed.