ASHDOWN, U.S.A., INC., Plaintiff,

v.

UNITED STATES, Defendant.

Court No. 83–5–00742.

United States Court of International Trade.

Sept. 8, 1988.

---

Fitch, King and Caffentzis, James Caffentzis, New York City, for plaintiff.

John R. Bolton, Asst. Atty. Gen., Civ. Div., Washington, D.C., Joseph I. Liebman, Attorney–In–Charge, Intern. Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice, Saul Davis, New York City, for defendant.

## OPINION

CARMAN, Judge:

The parties in this action have submitted this case for decision on the agreed stipulation of facts, in lieu of a trial. Plaintiff requests that the Court sustain its claim and order Customs to reliquidate the subject entry under item 668.21, Tariff Schedules of the United States (1982) (TSUS), at a rate of 4.7% *ad valorem* and refund all excessive duties with interest. Defendant requests that judgment be entered dismissing plaintiff's action and sustaining the decision of Customs Service and the assessment of duties thereunder. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a).

The question presented in this case pertains to the proper rate of duty assessed with regard to an imported printing press described as one "PLANETA p44 Varient Offset–Press, Serial Number 59614/102 433, Size 70 × 100 cm."

The pertinent facts are as follows: The printing press was manufactured in East Germany in 1973. In the same year, the press was exported to West Germany and purchased by Weppert KG, Offsetdruk (Weppert), a West German printing company located in Schweinfurt, West Germany. The press was operated and utilized in Weppert's printing company from the time of purchase in 1973 until 1982, when it was sold to Ewald Schmitt, a West German dealer in used machinery.

Plaintiff purchased the press from Schmitt in 1982, and it entered at the port of New York on August 5 of that year. Prior to its exportation to the United States, the press was subject to engineering changes to adapt it to the requirements of plaintiff's customer in the United States. However, the engineering changes did not alter the name, character, use or identity of the press from that which it possessed in East Germany. During the use of the printing press in West Germany, repairs performed on the machine did not result in

an article which differed from that originally manufactured.

Upon liquidation the press was classified under item 668.21, TSUS and was assessed with duty under column 2 of 25% *ad valorem,* pursuant to General Headnote 3(f). Both parties agree the printing press is properly classifiable under item 668.21, TSUS. Plaintiff disputes the correctness of the imposition of the Column 2 rate of duty upon the imported press, and claims that the proper rate of duty is the Column 1 rate of 4.7% *ad valorem.*

The sole question before this Court is whether the imported printing press, manufactured in East Germany, sold to and used by a company in West Germany for nine years, and then resold to plaintiff for exportation to the United States, is subject to duty under either the Column 1 or Column 2 rate for item 668.21, TSUS.

The following are the pertinent provisions of the tariff schedules:

Printing machinery
* * * *

Other, including printing presses, offset duplicating machines, and stencil copy machines:
offset printing presses of the sheet-fed type weighing 3,500 pounds or more.............. 4.7 ad val (Column 1) 25% ad val (Column 2)

Item 668.21, TSUS (1982).

General Headnote 3 of TSUS provides as follows:

*Rates of Duty.* The rates of duty in the "Rates of Duty" columns numbered 1 and 2 and the Column designated LDDC of the schedules apply to articles imported into the Customs territory of the United States as hereinafter provided in this headnote:

\* \* \* \* \* \*

(f) *Products of Communist Countries.* Notwithstanding any of the foregoing provisions of this headnote, the rates of duty shown in Column numbered 2 shall apply to products, whether imported directly or indirectly, of the following countries and areas pursuant to section 401 of the Tariff Classification Act of 1962, to section 231 or 257(e)(2) of the Trade Expansion Act of 1962, or to

action taken by the President thereunder:

\* \* \* \* \* \*

German Democratic Republic & E. Berlin

(g) *Products of All Other Countries.* Products of all countries not previously mentioned in this headnote imported into the customs territory of the United States are subject to the rates of duty set forth in column numbered 1 of the schedules.

General Headnote 3, TSUS (1982).

Plaintiff contends that the printing press had become a *bona fide* part of the commerce of West Germany, had lost its identity as a product of a communist country, and therefore was not imported indirectly into the United States within the meaning of Headnote 3(f).

Defendant maintains that the printing press is a product of East Germany as defined by statute and by case law which has held that a "product of" a country includes manufactured articles of that country. Defendant further contends that the press was imported indirectly from a communist country without any substantial transformation.

■ Pursuant to 28 U.S.C. § 2639(a)(1) (1982), the classification of the Customs Service is presumed to be correct and the burden of proof is on the party challenging its classification. There is also a presumption that the press is a product of East Germany because it originated there. *United States v. Hercules Antiques, The Danwill Company,* 44 CCPA 209, 215, C.A.D. 662 (1957).

Plaintiff has the burden of showing by appropriate evidence that the printing press has actually become a *bona fide* part of the commerce of West Germany. *Id.* at 213. The Court of Customs and Patent Appeals in *Hercules Antiques* said:

It would be difficult, if not impossible, to define exact standards for determining the duration of stay of merchandise in an intermediate country, the nature of the transactions to which it is subjected there, and other circumstances necessary to divest it of its status as an import,

direct or indirect, from the Communist dominated country in which it originated. *Id.* at 212.

■ Plaintiff relies on *Greenhalgh Mills Corp. v. United States,* 6 CIT 280, 576 F.Supp. 646 (1983), *aff'd by unpublished opinion,* 746 F.2d 1491 (Fed.Cir.1984), which applies the divestiture theory cited above in *Hercules Antiques.*

Defendant argues that the Court of Appeals decision in *Greenhalgh* has no precedential value, pursuant to Rule 18 of the Rules of the Court of Appeals for the Federal Circuit since the decision was an unpublished opinion.[1] The opinion did affirm the Court of International Trade decision.

While this Court will not treat *Greenhalgh* as having precedential effect, its reasoning is most persuasive. The facts in *Greenhalgh* are analogous to the facts in the instant case. The theory of divestiture, that an import can be removed from its communist country status by becoming a *bona fide* part of the commerce of a non-communist country, has been applied by the Courts of Appeal in several cases with similar fact patterns in published opinions. In *Hercules Antiques,* as discussed *supra,* the United States Court of Customs and Patent Appeals held that the importer has the burden of showing by proper evidence that the connection between merchandise and country of origin has been so effectively broken that it could no longer be regarded as an import from that country. That same Court applied their *Hercules Antiques* decision in *United States v. Dessy Enterprises, Inc.,* 47 CCPA 16 C.A.D. 722 (1959). In *Dessy Enterprises,* the Court found that the importer had not met the burden outlined in *Hercules Antiques* and the Court quoted directly from *Hercules Antiques* "rather than chance a possible

misinterpretation" concerning Congressional intent. *Dessy Enterprises,* 47 CCPA at 19. In *Loblaw Groceterias, Inc. v. United States,* 22 CCPA 479 (1935), the Court of Customs and Patent Appeals held that goods having entered into the commerce of an intermediate country, at a period of many years after the original exportation were not an indirect importation from the country of manufacture. In *Acker v. United States,* 1 Ct.Cust.App. 404 (1911), the United States Court of Customs Appeals held that the intent with which and act is done is often conclusive of the effect and since there was no intent at the time of sale to export the goods to the United States, those goods entered the commerce of the intermediary country.

■ Defendant maintains that the substantial transformation test set out in *Belcrest Linens v. United States,* 741 F.2d 1368 (Fed.Cir.1984), is controlling. The test requires that in order for a product of a communist country to be assessed at the lower Column 1 rate of duty, the product must undergo a substantial transformation. Such transformation can occur "when as a result of a process an article emerges, having a distinct name, character or use." *Belcrest Linens,* 741 F.2d at 1372. Plaintiff concedes in the instant case that the printing press was not substantially transformed. (Stips. 11–13.)

The Court of Appeals for the Federal Circuit held in *Greenhalgh* that the substantial transformation test was not applicable in *Greenhalgh* because that case and *Belcrest Linens* were distinguishable on their facts. The Court pointed out that in *Belcrest Linens,* cotton fabric was imported from communist China into Hong Kong and made into pillowslips before being im-

---

1. Rule 18 states in pertinent part:

 (c) Publication. Opinions and orders which do not add significantly or usefully to the body of law or would not have precedential value will not be published in commercial reports of decisions. Opinions and orders designated as unpublished shall not be employed as precedent by this Court, nor may they be cited by counsel as precedent, except in support of a claim of res judicata, collateral estoppel, or law of the case.

 Res judicata cannot apply here because this is a different entry transaction involving different parties. Collateral estoppel does not apply here because this is a classification issue controlled by the classification provisions of the TSUS and classification cases are not subject to collateral estoppel. Law of the case does not apply since the instant case is separate from *Greenhalgh* and law of the case applies only to prior rulings involved in the same on-going case in which the ruling was made.

ported into the United States. The issue in *Belcrest Linens* was whether the processing of the fabric into pillowslips in Hong Kong caused the merchandise to be a product of Hong Kong. In *Greenhalgh*, however, looms were imported from Czechoslovakia to England without any intention of exporting the merchandise to the United States. There was no processing of material into merchandise in *Greenhalgh* just as there was no processing of material into merchandise in the instant case. In *Greenhalgh*, looms manufactured in Czechoslovakia were installed in an English mill and used continuously for eleven years. The looms were then resold to an unrelated person in the United States. In the instant case, the printing press was manufactured in East Germany, sold to a West German printing company, used by that company for nine years, and then sold to a West German dealer in used machinery. (Stips. 6–8.) That dealer resold the press to the plaintiff for exportation to the United States. (Stips. 9, 11.)

The Court of International Trade held in *Belcrest Linens* that decisions construing the marking statute, applying a substantial transformation test and General Interpretive Rule 10(h) are not controlling in deciding whether the product is an indirect export from a communist country. *Belcrest Linens v. United States*, 6 CIT 204, 573 F.Supp. 1149 (1983).

Since the instant case, like *Greenhalgh* is distinguishable on its facts from *Belcrest Linens* and since this Court held in *Belcrest Linens* that the substantial transformation test is not controlling, the only issue that remains is whether the plaintiff has sustained its burden of showing that the press became a *bona fide* part of the commerce of West Germany. We find that the plaintiff has done so. The press was continuously used in West Germany for nine years. The West German printing company purchased it with the intention of using it in their own facility. None of the companies involved was connected in any way with any of the other companies and the sale was an isolated instance.

The intent of Congress to deny the benefits of reduced duties to products of Communist countries has not been thwarted since this was a purely commercial transaction between individuals from West Germany and the United States. East Germany could not reasonably be held as receiving a benefit because of a reduced duty bestowed years later between a West German and an American company.

## CONCLUSION

In view of the foregoing, it is the determination of this Court that the plaintiff has sustained its burden of showing that the printing press was not an import from a Communist country.

Defendant's application to dismiss is denied. Customs is directed to reliquidate the subject entry under item 668.21 TSUS at 4.7% *ad valorem* and refund all excessive duties with interest.

SO ORDERED.