UNITED STATES of America, Plaintiff,

v.

JAC NATORI CO., LTD., Defendant.

**Court No. 90–08–00445.**

United States Court of
International Trade.

Oct. 14, 1993.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Marc E. Montalbine, and Office of Regional Counsel, U.S. Customs Service (I. David Krawet, of counsel), for plaintiff.

Irving A. Mandel, for defendant.

## MEMORANDUM & ORDER

AQUILINO, Judge:

In denying defendant's motion to dismiss this action brought by the government pursuant to 28 U.S.C. § 1582 to recover penalties and duties under 19 U.S.C. § 1592, this court ordered the defendant to answer the complaint and that discovery be completed. *See* Slip Op. 93–70, 17 CIT ——, 821 F.Supp. 1514 (May 12, 1993), familiarity with which is presumed.

### I

The first part of that mandate has been met but not the second. Rather, as the deadline for discovery drew near, the plaintiff interposed a motion to compel answers to its interrogatories and a motion to extend that deadline until 180 days after disposition of the first motion. Appendix B to the motion to compel contains some 70 written interrogatories propounded to the defendant along with what appear to be dozens of photocopies of business records. By plaintiff's reckoning, the defendant has answered interrogatories 1, 2, 3, 50, 61(b) and 70; all of the others have not been responded to in an acceptable manner.[1]

Indeed, Defendant's Response to Plaintiff's First Set of Interrogatories dated June 24, 1993 asserts the following "general objections" to them, among others:

1. ... [T]hey are overly broad, unduly burdensome, vague, confusing, argumentative, repetitive, duplicative of prior requests for production of documents, not reasonably calculated to lead to the discovery of relevant information or admissible evidence, and/or request that defendant make or accept legal conclusions or arguments.

2. ... [T]hey call for information, documents, or responses that are exempt from production as attorney work product, or are protected by the attorney-client privilege or any other privilege or exemption provided by law.

. . . . .

4. ... [T]hey seek information that a judge of a federal district court has already ordered that plaintiff may not obtain from defendant. Sprizzo, J., *U.S. v. Jac Natori, Inc.,* M–18–306 (S.D.N.Y.1988).[2]

Now in its response to plaintiff's motion to compel, the defendant supplements the foregoing objections with argumentation that it has already "provided all information and pertinent records and documents in its possession during the administrative phase of the proceeding, the district court summons enforcement proceeding, and this de novo stage of the penalty proceeding"[3]; that "Customs auditors and special agents have repeatedly accused Natori of engaging in criminal conduct, including on-going allegations of concealing or destroying requested documentation" and thus it "and/or its representatives are faced with a real and appreciable threat of criminal prosecution, requiring them to invoke their Fifth Amendment privileges against self-incrimination"[4]; and that "the government is now collaterally estopped from re-arguing the issues long since determined by the district court."[5] In addition, the defendant asserts specific objections to specified interrogatories.

In response to plaintiff's concomitant motion to extend the deadline for discovery, the defendant contends that the plaintiff itself has failed to afford discovery and "seemingly is attempting to tie its lack of response to

---

1. *See* plaintiff's Motion to Compel, Appendix A (Table of Responses Provided by Natori to Plaintiff's First Set of Interrogatories).

2. Plaintiff's Motion to Compel, Appendix C, pp. 1–2.

3. Defendant's Response in Opposition to Plaintiff's Motion to Compel, pp. 1–2.

4. *Id.* at 2.

5. *Id.* at 15.

these discovery requests with its motion to compel, claiming that somehow defendant has an unfair advantage."[6] The defendant requests that the plaintiff be ordered to afford discovery in the form of answers to written interrogatories and production of documents and witnesses for deposition.

## II

■ According to Appendix A to plaintiff's motion to compel, the defendant asserts a Fifth Amendment privilege in objection to interrogatories 4–6 (regarding the identity of Natori shareholders, its officers and their duties); 13–14 (regarding any relationship between Natori shareholders and those of FF International Mfg. Corp. ("FFI")); 16–22 (regarding the business practices of Natori during the period 1980 and 1985); 25–26 (regarding the officers responsible for disbursing moneys and the manner in which they were paid and whether and how they could draw moneys from accounts); 29–32 (regarding whether Natori made payments to a specified bank account and the reasons for them); 33–35 (regarding the identity of persons who set up Natori's accounting system and maintained it); 36–38 (regarding the manner in which the corporation's ledgers were maintained); 42 (regarding recordation of certain accounts payable); 43–44 (regarding the identity of source documents and the accounting firm which examined Natori's books and records); 45–53 (regarding certain year-end-adjustment entries); 54 (regarding merchandise and materials purchased but not recorded in the books and records); 55 (regarding certain proper names); 57–60 (regarding the procedures used in submitting consumption-entry paperwork); 61(c) (regarding the cost of components of the mer-

chandise); 61(g) (regarding the manner in which Natori paid for the merchandise); 62 (regarding the identity of Natori officers, employees or agents involved in decisions on prices, charges and values reported to Customs); and 64–66 (regarding the actual nature and legal consequences of the five entries at issue herein). That is, these questions have given rise to the following, repeated response:

> Defendant and its representatives respectfully decline to answer ... on the ground that the answer may tend to incriminate them. Defendant is unable to appoint an agent who, without fear of self-incrimination, could furnish such requested information as may be available to it. *U.S. v. Kordel*, 397 U.S. 1, 7–10 [90 S.Ct. 763, 766–69, 25 L.Ed.2d 1] ... (1970). See *In re: Corrugated Container Antitrust Litigation*, 662 F.2d 875, 882–883 ( [D.C.Cir.] 1981).[7]

■ Of course, now in response to plaintiff's motion to compel, the defendant admits, as it must, that the privilege against self-incrimination does not attach to corporations[8], nor, for that matter, may a custodian of corporate books or records withhold them on the ground that he personally might be incriminated by their production.[9] Moreover, it has been held that the Fifth Amendment testimonial privilege does not apply to an action like this one brought pursuant to 19 U.S.C. § 1592. See *United States v. Gordon*, 10 CIT 292, 634 F.Supp. 409 (1986).[10]

On the other hand, the court stated in *Gordon* that "the threat of future criminal prosecution may justify assertion of the fifth amendment privilege against self-incrimination even in a strictly civil proceeding." 10 CIT at 296, 634 F.Supp. at 414, citing *Lef-*

---

6. Defendant's Opposition to Plaintiff's Motion to Stay Further Discovery and Extend the Discovery Cut–Off Date, p. 2.

7. Plaintiff's Motion to Compel, Appendix C *passim*.

8. *See, e.g., California Bankers Assn. v. Shultz*, 416 U.S. 21, 55, 94 S.Ct. 1494, 1514, 39 L.Ed.2d 812 (1974).

9. *See, e.g., Curcio v. United States*, 354 U.S. 118, 122, 77 S.Ct. 1145, 1148, 1 L.Ed.2d 1225 (1957).

The court notes in passing that Appendix C to plaintiff's motion to compel contains copies of documents apparently produced by the defendant.

10. The plaintiff attempts to rely on this case for the proposition that the privilege has not been properly asserted. This attempt misses the mark. The nature and extent of defendant's objection are readily discernible from the papers at hand. *See Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

*kowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). The plaintiff asserts, however, that

> [n]either Natori nor any of its representatives have been indi[c]ted for crimes arising from the entries involved in this action. Moreover, the Government's interrogatories deal only with the period of time from 1980 through 1985. The five-year statute of limitations for violations of the customs laws committed during this period has already expired. *See* 18 U.S.C. § 3283. Accordingly, Natori and its representatives face no real and appreciable threat of criminal prosecution.

Motion to Compel, p. 6.

On its part, the defendant denies that the statute of limitations bars an action against it for violation of 18 U.S.C. § 551 [11] and maintains that "on at least three separate occasions government officers responsible for the investigation and prosecution of this case have pointedly accused Natori of engaging in fraudulent conduct and of concealing information and/or destroying import-related documents." Defendant's Response in Opposition to Plaintiff's Motion to Compel, p. 8. An affirmation of defendant's counsel appended to this response states:

> ... 2. During the course of the now eight year Customs investigation underlying this penalty proceeding, I have encountered several instances of criminal allegations being levied against Natori by various government officers responsible for this action.
>
> 3. On or about May 22, 1986, while meeting with Customs Special Agent Stephen Yagoda, Mr. Yagoda pointedly remarked that Natori had engaged in fraudulent conduct and that my law firm should get a higher class of clients. . . .
>
> 4. On or about January 9, 1987 I received a telephone call from Customs Auditors Eugene Donohue and Robert Perri regarding the ongoing audit of Natori's

books and records. During that telephone call, the government auditors pointedly demanded an interview with Natori's accounting personnel for the clearly expressed purpose of establishing whether documents they believed were relevant to the audit had been destroyed by Natori.

> 5. On or about February 11, 1987 I was served on behalf of Natori with an undated administrative summons demanding, among other things, testimony stating that "where an identified document has been destroyed or alleged to have been destroyed, state the date and reason for its destruction, identify each person having any knowledge of its destruction, and each person responsible for its destruction".
>
> 6. On or about May 11, 1987 I met with Customs Special Agent Charles H. Geier and during the course of that meeting Mr. Geier pointedly demanded that I advise Natori not to destroy any documents.

The defendant further argues that the statute of limitations does not bar the government from pursuing a criminal action against it and its representatives for entries made less than five years ago or for conspiring to commit import fraud with regard to entries made earlier because an act in furtherance of such conspiracy, like destruction of documents, starts the running of the period of limitation anew.

As indicated above, the defendant attempts to rely on *In re Corrugated Container Antitrust Litigation,* 662 F.2d 875, 886 (D.C.Cir. 1981), stating that the

> statute of limitations begins to run for an individual defendant involved in a continuing conspiracy from the conclusion of the conspiracy unless an individual can show that he withdrew from the conspiracy by an affirmative act designed to defeat the purpose of the conspiracy.

---

11. This section of the code imposes criminal responsibility on:

Whoever willfully conceals or destroys any invoice, book, or paper relating to any merchandise imported into the United States, after an inspection thereof has been demanded by the collector of any collection district; or

Whoever conceals or destroys at any time any such invoice, book, or paper for the purpose of suppressing any evidence of fraud therein contained. . . .

However, in that litigation, the person asserting the privilege against self-incrimination was found to still be within the period of limitation at the time of his deposition and therefore clearly had reasonable cause to fear prosecution for his answers. That is, in January 1978 a federal grand jury in Houston, Texas had indicted companies and individuals for an alleged nationwide conspiracy to fix prices in the corrugated container industry. While the grand jury investigation and the subsequent criminal trial were in progress, purchasers of corrugated products filed class and non-class actions in various U.S. district courts. And in the course of discovery in those actions, the plaintiffs noticed the deposition in question for April 3, 1981. The court of appeals explained that the

> six questions that appellant refused to answer relate to potentially incriminating matter because they concern alleged exchanges by appellant of price information with competitors in the corrugated container industry, and they might reveal his participation from 1968–75, while he worked with Weyerhaeuser and CORCO, in an alleged on-going price-fixing conspiracy that purportedly continued until 1978.

*Id.* at 883. The court could not agree with the district judge that the likelihood of prosecution was "fanciful at most" even though the criminal trial had finished because there was no certainty at that time that a second criminal action could not. and would not be brought. *See id.* at 884–85.

In the action at bar, the defendant takes the position that the government's allegations imply that

> Natori is involved in a pervasive fraud to conceal imports, reduce dutiable value and otherwise fraudulently produce or alter massive amounts of documents, books and records. In effect, the government is claiming that this importer's way of doing business is itself criminal, and that books and records have been altered or destroyed in order to conceal the financial

consequences of Natori's alleged acts. If these allegations are true then the implications of these alleged acts go well beyond the boundaries of this case and porten[d] serious liabilities for the parties involved.

Defendant's Response in Opposition to Plaintiff's Motion to Compel, pp. 9–10. Hence, the defendant argues that its representatives are faced with a real and appreciable threat of criminal prosecution.

If this is an accurate perception of self on the part of the defendant, as opposed to fanciful argumentation by its attorney, everything that is now before this court on plaintiff's motion to compel points well to the past, be they the subject entries or the threats alleged to have been made by Customs agents or the proceedings which have set this stage for the parties' discovery.[12] In short, not only has the defendant failed to persuade this court that its constitutional concern is not within the realm of speculation, the court is also not convinced that questions which the plaintiff is asking call for answers even arguably tending to incriminate. To quote some of the interrogatories at issue:

4. Identify all shareholders of Natori, indicating the number of shares owned by each shareholder.

13. State whether any shareholders of Natori are related to any shareholders of FFI.

18. Identify those officers or employees of Natori who were responsible for ordering, purchasing, receiving, inventorying, and paying for (identify the person who did what) ladies' wearing apparel manufactured by FFI during the period 1980 through 1985.

25. Identify those officers or employees of Natori who were responsible for disbursing moneys on behalf of Natori during the period 1980 through 1985.

32. State whether any of the payments made to the "Jazfel" bank account were made on behalf of FFI and identify the payments which were so made.

---

**12.** The court notes in passing that the nature of unlawful entry of merchandise and the difficulty and therefore the timing of its discovery have often led first to criminal prosecution before assertion of claims for penalties under 19 U.S.C. § 1592. *See, e.g., United States v. Dantzler Lumber & Export Company,* 16 CIT ——, 810 F.Supp. 1277 (1992), and cases cited therein.

33. Identify the person who set up Natori's accounting system, books, and records.

37. Explain the manner in which Natori's accounts payable ledgers were maintained for 1981 and 1982, including the meaning of the columns headed "L.C.", "Actual," and "Bal." and the items that were recorded in the various columns....

42. State whether the prices actually payable to FFI for ladies wearing apparel manufactured by FFI were recorded during 1981 and 1982 in the column headed "Actual" in Natori's accounts payable ledgers.

44. Identify the accounting firm that examined Natori's books and records for 1981 and 1982 and the person working for the accounting firm who examined Natori's books and records for 1981 and 1982.

55. State whether Natori, its shareholders, officers, or employees contracted with, or hired or employed persons with names such as, or similar to, "Carmen," "Sunshine Cutters," and/or "Trade–East", during the period 1980 through 1982.

### III

■ As also indicated above, the defendant attempts to rely on what amounts to a law-of-the-case objection. For example, in addition to raising a claim of testimonial privilege to the foregoing interrogatory 18, defendant's response thereto, as well as to interrogatories 16, 19, 20–22, 25, 26, 29–38, 40–44, 46–48, 51–55, 57–60, 61(c), 61(g), and 62–65, states:

Pursuant to the Order of the Hon. John E. Sprizzo in *U.S. v. Jac Natori, Inc.*, M–18–306 (S.D.N.Y.1988), the law of this case is that plaintiff is not entitled to compel from defendant's representative 1) an explanation of documents previously supplied in the course of the penalty investigation or 2) an assertion that the representative has a connection with the corporation of

which the government does not know.... [13]

That court proceeding grew out of an attempt by the government to compel Natori to turn over documents and give testimony regarding alleged concealment or destruction of records which Customs suspected had not been produced. The district judge ordered production of documentation but excused Natori representatives from giving testimony.

The plaintiff now argues that law-of-the-case governs subsequent stages of the same matter, citing *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983), and *Ashdown, U.S.A., Inc. v. United States*, 12 CIT 808, 810 n. 1, 696 F.Supp. 661, 664 n. 1 (1988) ("law of the case applies only to prior rulings involved in the same on-going case in which the ruling was made").

Of course, it can be also argued that the matter which led the government to seek relief in the district court is also what leads it to this Court of International Trade now. But the Supreme Court has characterized the doctrine the defendant presses as a "discretionary rule of practice." *United States v. U.S. Smelting Refining & Mining Co.*, 339 U.S. 186, 199, 70 S.Ct. 537, 545, 94 L.Ed. 750 (1950). And in *Arizona v. California*, the Court stated that the doctrine "directs a court's discretion, it does not limit the tribunal's power." 460 U.S. at 618, 103 S.Ct. at 1391, citing *Southern R. Co. v. Clift*, 260 U.S. 316, 319, 43 S.Ct. 126, 127, 67 L.Ed. 283 (1922), and *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). In short, whatever law developed in the S.D.N.Y. miscellaneous matter 18–306 on June 21, 1988 [11] does not provide the defendant with a universal basis for denying discovery herein. In fact, the district judge closed the colloquy on that date with a remark that his court was not the place in which to seek appropriate relief.[15]

### IV

■ The defendant has objected to interrogatories 7–12, 15, 23, 24, 40, 41, 61(a) and 61(h) on the ground that

---

**13.** Plaintiff's Motion to Compel, Appendix C, p. 7, para. 18.

**14.** *See generally* Exhibit 2 to Appendix C to plaintiff's Motion to Compel.

**15.** *See id.* at 20.

it is not required to engage in research and compilation when the purpose of the effort is to assist plaintiff in the preparation of its case. *H[a]lder v. Intern. Tel. & Tel. Co.,* 75 F.R.D. 657, 658 (E.D.N.Y. 197[7]); *United Cigar—Whelan Stores Corp. v. Philip Morris, Inc.,* 21 F.R.D. 107, 109 (S.D.N.Y.1957).

In *Halder,* the court noted that "where the data is available to plaintiff, either by consent of defendant (as is the case here) or by means of the appropriate discovery motion, this party should assume the burden of locating and assimilating the information he desires." 75 F.R.D. at 658, citing *H.K. Porter Co. v. Bremer,* 12 F.R.D. 187 (N.D.Ohio 1951). The court also cited *DaSilva v. Moore–McCormack Lines, Inc.,* 47 F.R.D. 364 (E.D.Pa.1969), stating that "it is necessary to balance the burden which answering these interrogatories would place on defendant, against the value of the answers to plaintiff's case." 75 F.R.D. at 658. In *United Cigar,* the court decided not to compel the defendant to respond to interrogatories regarding its total sales and its advertising expenditures per the following reasoning:

> . . . . Plaintiff does not deny that the information sought to be obtained by . . . interrogatory is equally available to it, but contends that it is nevertheless entitled to have the answers so that the issues on the trial may be narrowed. While interrogatories may certainly on many occasions effect the salutary purpose contended for by the plaintiff, I do not believe that discovery proceedings should be utilized to cast upon a defendant the burden of establishing the plaintiff's case when the plaintiff can at least as readily establish the requested facts.

21 F.R.D. at 109.

Here, the interrogatories to which the defendant objects as requiring it to do research are as follows:

7. State the year when Natori first imported merchandise produced abroad.

8. State the date and place of the incorporation of FF International Mfg. Corp. ("FFI").

9. Identify the incorporators of FFI.

10. Identify the shareholders of FFI.

11. Identify the major shareholders of FFI.

12. Identify the corporate officers of FFI from January 1, 1980 to date.

15. State the date when Natori commenced purchasing ladies' wearing apparel from FFI.

23. Identify all contractors, suppliers or other persons utilized by Natori during the period 1980 through 1985 in cutting materials and/or sewing or otherwise assembling components for ladies' wearing apparel (identify the persons who did what) for shipment to FFI.

24. Identify all contractors, suppliers or other persons utilized by Natori for cutting materials and sewing or otherwise assembling components for ladies' wearing apparel during the period 1980 through 1985.

40. State whether the entries listed in Exhibit A to the complaint are all the entries of ladies' wearing apparel imported by Natori during 1981 and 1982.

41. State whether the entries listed in Exhibit A to the complaint represent all merchandise imported by Natori during 1981 and 1982. If your answer is negative, identify the additional imports by entry numbers, dates of entry, and location of the Customs port through which the imports were entered.

61. For all the merchandise covered by the entries listed in Exhibit A to the complaint:

> a. State the total payments made for the imported merchandise to the supplier by Natori;

\* \* \* \* \* \*

> h. State the price at which the merchandise was sold in the United States following importation[.]

As posited, none of these interrogatories appears to require the kind of preparation approaching that which a court could hold unduly burdensome or tending to directly aid the interrogator's case, nor has the defendant now attempted to show otherwise in its papers in opposition.

## V

■ Nonetheless, plaintiff's interrogatories and motion to compel make recitation of the nature and scope of discovery according to CIT Rule 26(b)(1) necessary, to wit:

In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

As indicated, the ultimate guidepost is and must be relevance. From this perspective, a number of plaintiff's requests appear to be lacking. For example, its complaint alleges in paragraph 5 that Natori purchased most of its wearing apparel from FFI, a Philippines company which was partially owned by Kenneth Natori's father-in-law, and in paragraph 15 that the defendant did not declare assists provided to FFI and did not reflect additional costs with respect to its purchases from FFI. In its answer, the defendant admits the essence of the allegations in paragraph 5 while denying those in 15. With issue thus joined, this court is unable to grasp the relevance of interrogatories 8–13, *supra,* and plaintiff's motion to compel as to them must therefore be denied. On the other hand, by way of comparison in regard to FFI, interrogatories 15, 18, 23 and 32, *supra,* could either result in answers directly admissible at trial or lead to such evidence, and plaintiff's motion as to them is therefore granted.

Reviewing all of the other interrogatories propounded by the plaintiff from the perspective of relevance to the issues joined, as the court is constrained to do, the motion to compel is denied as to those numbered 4, 14 and 26. Moreover, the court concludes that additional responses need not be ordered at this time to interrogatories 27, 28, 68 and 69.

## VI

■ In thus granting the government's motion to compel answers to all of its interrogatories except those numbered 1–4, 8–14, 26–28, 50, 61(b) and 68–70, the court is reminded once again how ineffectual artful written interrogatories between counsel can be. Indeed, exchange of such questions by both sides in this action has led to their violation of the court's order of May 12, 1993 that discovery be completed.

If, as the defendant indicates in its papers, Customs has refused to date to grant any discovery, it has had no basis for doing so. To repeat, this kind of action does not commence on a clean slate. Administrative, if not criminal, proceedings ensue first, often spanning many years, which appears to be the chronology presented here. Then again, the requirement of CIT Rule 11 that a complaint not be drawn out of thin air, combined with the tradition that a party plaintiff has a primary and independent obligation to prosecute any action brought by it, from the moment of commencement to the moment of final resolution, imply that the plaintiff has and has had accumulated information subject to discovery. In short, the plaintiff is not at liberty in this action to deny discovery pending receipt of information through such process from the defendant. Defendant's request that the plaintiff be ordered to afford discovery at once in the form of answers to written interrogatories and production of documents and witnesses for deposition [16] must be, and it therefore hereby is, granted.

This grant of relief to the defendant, including written interrogatories, shall not be construed, however, as a license to obstruct

---

**16.** The court has just received another motion by the plaintiff, this one to stay the time to respond to requests for admissions apparently served by the defendant at the close of the period ordered by the court for discovery.

This motion for a limited stay will be granted, in the interests of orderly procedure.

further legitimate discovery in preparation for trial. Indeed, the record already supports imposition of sanctions within the ambit of CIT Rule 37 on both sides, but they shall await the deadline for all discovery, which is hereby extended until December 17, 1993. The parties are to present a proposed pretrial order to the court on or before December 30, 1993.

Trial will commence at 10 a.m. on Monday, January 10, 1994.

So ordered.